## Hubbard v. Commonwealth.

May 23, 1947.

Ray C. Lewis, Judge.

E. R. Denney for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

R. W. Dyche died of a heart attack. Robert Hubbard has been adjudged guilty of killing him and sentenced to two years' imprisonment on a charge of voluntary manslaughter. The trial was had in Jackson County on a change of venue.

Hubbard was at home on furlough from the army in August, 1945. He was arrested for being drunk in a public place and taken before the County Judge of Laurel County. Being too drunk to be tried, he was ordered to jail, but refused to go peaceably. Dyche, the jailer, and Newman, a deputy, took hold of him. The prisoner resisted and struck Newman. In the scuffle both fell to the floor and Hubbard lay on his back "kicking at" anybody or anything within reach. Dyche had hold of him. He said, "I have done all I can; you will have to help me," or "Somebody is going to have to take my place; I am done." Judge Boggs took hold of the prisoner and persuaded him to get up; but he continued to resist as he was being taken to jail by Newman and another person. Dyche followed them out of the courthouse. He put his hand over his heart and sat down. In a few minutes he got down on the ground where he "rolled and tumbled" until he died within a half hour. Hubbard never struck Dyche at all, and he received no physical injury. He had been suffering for some time with a serious condition of the heart, and had remarked to a friend several hours before that he was feeling bad. Three doctors testified that his death was due to acute dilatation of the heart, but that the physical exercise and excitement was calculated to accelerate his death.

The defendant testified that he had no memory of what had occurred. He and the deceased were friends.

The only inquiry we need make is whether the facts constitute involuntary manslaughter. It seems manifest that under any proper view of the case the defendant could be guilty of no higher degree of homicide, although the court did not give an instruction on that offense. The death of Dyche was charged to have re-

sulted from the commission by Hubbard of a misdemeanor not of a character likely to endanger life. Sikes v. Commonwealth, 304 Ky. 429, 200 S. W. 2d 956. The Attorney General frankly concedes that the defendant was at least entitled to an instruction on involuntary manslaughter, and expresses grave doubt whether he is guilty of any culpable homicide. The only theory of guilt is that his unlawful act in resisting arrest contributed to Dyche's death or accelerated it. Tucker v. Commonwealth, 303 Ky. 864, 199 S. W. 2d 631.

There is a close line of distinction between criminal responsibility and innocence where the facts approach or are similar to those presented here. One cannot escape culpability because factors other than his act contributed to the death of another or hastened it, such as where he was suffering from some fatal malady or had a predisposed physical condition, as being in feeble health, without which a blow or other wound would not have been fatal. Hopkins v. Commonwealth, 117 Ky. 941, 80 S. W. 156, 25 Ky. Law Rep. 2117, 4 Ann. Cas. 957; Warren on Homicide, sec. 58; Wharton's Criminal Law, sec. 201; 26 Am. Jur., Homicide, secs. 45, 48. Under most modern decisions death caused or accomplished through fright, fear or nervous shock may form a basis for criminal responsibility. 40 C. J. S., Homicide, sec. 11; 26 Am. Jur., Homicide, sec. 47; Sanders v. Commonwealth, 244 Ky. 77, 50 S. W. 2d 37. On the other hand, it is held that to warrant a conviction of homicide the act of the accused must be the proximate cause of death; that if there was an intervening cause for which the accused was not responsible and but for which death would not have occurred, he is blameless. 40 C. J. S., Homicide, sec. 11(b); 26 Am. Jur., Homicide, sec. 50; Wharton, sec. 202; Warren, sec. 59.

We have a case in our jurisprudence like the present one in principle. A woman became frightened because of the unlawful discharge of a pistol on a public highway by the defendant, and because of the fright she gave premature birth to a child, after which she became sick and died. We held that while the woman had been badly frightened by the unlawful act of the defendant and her miscarriage was caused by it, her death was not the natural or probable consequence of the defendant's unlawful act. Commonwealth v. Couch,

106 S. W. 830, 32 Ky. Law Rep. 638; 16 L. R. A., N. S., 327.

Somewhat like this case is People v. Rockwell, 39 Mich. 503, where the defendant knocked a man down with his fist and a horse jumped on him or kicked him, inflicting injuries from which he died. The defendant was held not responsible. In Ex parte Heigho, 18 Idaho, 566, 110 P. 1029, 32 L, R. A., N. S., 877, Ann. Cas. 1912A, 138, Heigho had gone to the home of Barton where they engaged in a violent fight. Barton's mother-in-law became badly frightened and died within thirty minutes. An autopsy revealed she had died of a species of heart attack. The case was before the court on a writ of habeas corpus sought by Heigho. Reviewing several old English cases and comments by learned scholars in the law, as well as a New York case, the court declined to weigh or to express an opinion as to the effect of the evidence, saying that it should be left to a jury to determine from all the facts and circumstances whether the act of the accused was the direct and actual cause of the death of the woman. The sole question was whether there was a sufficient disclosure of a public offense for which the prisoner should be held on a preliminary examination. The court believed it would be unsafe and unreasonable and often unjust to hold as a matter of law that under no state of facts should a prosecution for manslaughter be sustained where death was caused by fright, fear or terror alone, even though no hostile demonstration or overt act was directed at the person of the deceased; hence the writ of habeas corpus was denied.

In Letner v. State, 156 Tenn. 68, 299 S. W. 1049, 55 A. L. R. 915, the defendant had fired into a river near a boat for the purpose of merely frightening the occupants. One of them leaped overboard in order to avoid the apparent danger of being shot, and in so doing overturned the boat, with the result that one of the other occupants was drowned. The court held that the defendant having set in motion a series of forces which resulted in the death of the man, his act was the proximate cause of his death and the accused could not avoid the consequences of his wrongful act by relying on a supervening cause which resulted naturally and proximately from that act.

822

It seems to us that where the cause of death was not due to a corporal blow or injury (essential under the early common law) or to some hostile demonstration or overt act directed toward the person of the decedent, there is no criminal liability unless death or serious bodily harm was the probable and natural consequence of an indirect, unlawful act of the accused. If there is reasonable doubt of this it would be unjust to punish the accused. Commonwealth v. Couch, supra; Hendrickson v. Commonwealth, 85 Ky. 281, 3 S. W. 166, 18 Ky. Law Rep. 914, 7 Am. St. Rep. 596; Warren on Homicide, sec. 56; 26 Am. Jur., Homicide, sec. 190; 40 C. J. S., Homicide, sec. 11b.

In the present case the misdemeanor of the defendant must be regarded as too remote—not in time, to be sure, but as the cause. The failure of the man's diseased heart was the cause. Livingston v. Commonwealth, 14 Grat., Va., 592. The deceased knowing he had a serious condition of the heart undertook a task which he knew would excite him or create an emotional state of mind, which he also well knew he should have avoided. The evidence is that he had theretofore exercised such wise discretion. His intervening act in rolling and tumbling in pain on the courthouse yard, instead of lying quiet and still, was probably as much responsible for his ensuing death as was the initial excitement caused by the conduct of the accused. It was suggested in reference to the death of the woman in the Couch case that it may have been due to improper or want of attention following her confinement, or to some unrelated disease, hence the indictment which described the facts in detail was held not to state a criminal offense. It is, at least, speculative to say that the act of the defendant in this case was sufficiently proximate to impose criminal responsibility upon him for the unfortunate death. We are of opinion, therefore, that the court should have directed an acquittal.

The judgment is reversed.