89 N.J. Super. 52 (1965)
213 A.2d 320
THE STATE OF NEW JERSEY
v.
THOMAS McKEIVER, DEFENDANT.
Superior Court of New Jersey, Law Division  Criminal.
Decided September 22, 1965.
*53 Mr. Joseph G. Glavin, Assistant Prosecutor, for the State (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
Mr. Angelo R. Bianchi for defendant (Messrs. Lordi, Lordi & Bianchi, attorneys).
*54 YANCEY, J.C.C. (temporarily assigned).
Defendant was indicted by the Essex County grand jury and charged with the crime of murder.
At about 1:30 A.M., October 29, 1963, defendant entered the Green Village Tavern in Newark, New Jersey. Tied around his head was a light gray handkerchief which concealed the lower part of his face. Upon entering the tavern he immediately fired a shot into the ceiling and ordered the bartender and four other persons to move to the end of the bar. Defendant then commanded these persons to place their wallets on the bar, and they complied. He then went to the back of the bar and opened the cash register and took approximately $90. After so doing, defendant picked up the wallets and ordered the victims to walk toward the front door of the tavern. As they were doing this, Mrs. Julia Yuhas toppled over and fell to the floor. Defendant, on seeing this, ran out of the front door of the tavern and disappeared.
Minutes later Mrs. Yuhas was administered first aid by the Newark Emergency Squad and was subsequently taken to Newark City Hospital. She was pronounced dead at 2:05 A.M. by Dr. Evke of the hospital staff. An autopsy performed by the Chief Medical Examiner, Dr. Edwin H. Albano, disclosed, in the doctor's opinion, that Mrs. Yuhas' death was "due to fright during hold-up in tavern: cardiac arrest; occlusive arteriosclerotic coronary artery disease."
Defendant was subsequently apprehended and, as stated, indicted for murder. The indictment was returned on the theory that decedent met her death as a result of defendant's actions during the course of a robbery he was committing. The State, under this indictment, contends that since death resulted during the commission of a high misdemeanor (robbery), a charge of first degree murder is appropriate under the "felony murder" theory. Defendant disagrees and has made this timely pretrial motion pursuant to R.R. 3:5-5 to dismiss the indictment.
Defendant contends that his acts do not substantiate the State's charge of felony murder. He grounds this contention, *55 and relies heavily, on the fact that there was no direct physical contact between himself and decedent, and therefore his acts were not those which would render him responsible for Mrs. Yuhas' death.
The court, on this motion, is called upon to consider the sufficiency of the indictment. N.J.S. 2A:113-2, the statute upon which the indictment was returned, declares:
"Murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy, is murder in the first degree. * * *"
The statute is a codification of the so-called "felony-murder rule" which was developed in England under the common law. The rule places upon a man committing a felony, or attempting to commit a felony, the hazard of being guilty of murder if he creates any substantial human risk which would actually result in the loss of life; and it does this without excluding those homicides which occur so unexpectedly that no reasonable man would have considered any risk of this nature to be involved. The English jurists reasoned that certain felonies have been attended so frequently by death or great bodily harm, even when not intended or contemplated by the particular wrongdoer, that they must be classified as dangerous. Common experience points to the presence of a substantial human risk from the perpetration of such wrongful acts as arson, burglary, rape and robbery. The intent to avoid all personal harm, formed in the mind of the transgressor at the time he embarks upon such a felony, is no reasonable safeguard that death will not result from his illegal actions.
This common law concept has been carried over into our laws and is so expressed by the Legislature in the cited statute. State v. Smith, 32 N.J. 501 (1960), certiorari denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
The leading American decision concerning the so-called "felony murder rule" is that of the Supreme Court of Michigan. *56 In People v. Pavlic, 227 Mich. 562, 199 N.W. 373 (1924), 35 A.L.R. 741 defendant sold liquor, under circumstances amounting to a felony, to a purchaser who became drunk and died from exposure. The Michigan court refused to hold that the mere fact of this accidental death resulting from such a felony was murder: "Notwithstanding the fact that the statute has declared it to be a felony, it is an act not in itself directly and naturally dangerous to life."
In the instant case, the death occurred during the perpetration of an act which created substantial human risk. Defendant had in his hand a pistol, which he fired to demonstrate to the patrons of the tavern that he meant to place them in fear of losing their lives or receiving great bodily harm if they did not immediately submit to his demands. It does not matter whether he intended to do actual harm, or whether he did not contemplate decedent's death by his acts.
The death occurred during the commission of a high misdemeanor. The death in the Pavlic case, supra, resulted from an act on the part of defendant, which act was not a felony under the common law, but was made a felonious act by legislative enactment.
After careful consideration, I find that death occurred under circumstances which substantiate the theory of "felony-murder."
There still remains to be determined the more difficult question of whether or not defendant can be held responsible for the death of Mrs. Yuhas, since there appears to have been no actual physical contact with her that led to her demise.
Under early common law there could be no culpable homicide unless it was the result of some kind of bodily harm inflicted upon the victim. The reasoning for such holding was due to the dreaded fear, perhaps then justified, of prosecutions based on witchcraft or sorcery. Regina v. Merton, 3 Fost & F. 492, 176 Eng. Repr. 221 (Q.B. Cir. 1862). Modern courts have come to reject this view, and it has been considered unreasonable and possibly subversive of justice that criminal responsibility should not attach under circumstances *57 where death resulted from nonphysical forces such as terror and grief. 26 Am. Jur. 191, sec. 47. See also Ex parte Heigho, 18 Idaho 566, 110 P. 1029 (Sup. Ct. 1910).
Fright, or other "mental force" as it has been called, 1 Bishop, New Criminal Law, (8th ed. 1892), sec. 562, will receive judicial recognition if it is accompanied by physical force. Physical force does not necessitate physical contact, because one can exert physical force over another by "working upon the fancy of another or treating him harshly or unkindly," as by certain actions which might cause him to "die of fear or grief." 1 Hale P.C. 429; 1 East P.C. 225.
In the Heigho case, supra, defendant and another went to the home of a person named Barton to discuss a grievance. Heigho was wearing a gun in plain view on his person. During the ensuing argument blows were exchanged between Heigho and Barton. Present during the altercation was Barton's mother-in-law, Mrs. Riegleman. She became upset and excited due to the fight, and as a result expired shortly thereafter of aneurysm of the ascending aorta. No one had touched her during the struggle between Heigho and Barton. The Idaho Court held that Heigho could be tried for manslaughter.
In the instant case, defendant is charged with causing death while committing a robbery, a common law felony. In Heigho death came to the woman while she witnessed a fight. In the case at bar, Mrs. Yuhas, who was also a victim of robbery, died.
The indictment as presented is sufficient in that it sets forth the necessary facts required to adequately charge defendant with the crime of murder, within the purview of the statute. The fact that there was no physical contact with decedent does not negate the premise that a homicide occurred as a result of fear and apprehension during defendant's commission of a robbery.
This indictment contains no clear or palpable defect. Accordingly, defendant's motion to dismiss same is hereby denied.