Sam Junior STEVENS, Appellant,

v.

UNITED STATES, Appellee.

No. 4615.

District of Columbia Court of Appeals.

Argued Nov. 26, 1968.

Decided Jan. 28, 1969.

William J. Garber, Washington, D. C., with whom W. Theophilus Jones, Washington, D. C., was on the brief, for appellant.

Lawrence Lippe, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and James E. Kelley, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING and GALLAGHER, Associate Judges, and QUINN (Associate Judge, Retired).

FICKLING, Associate Judge.

Appellant appeals from a conviction of negligent homicide. D.C.Code 1967, § 40–606. He claims that the trial court should have granted his motions for judgment of acquittal on the ground that the evidence was legally insufficient to support a conviction.

The testimony at trial established that decedent, while a passenger in a motor vehicle negligently driven by appellant, suffered multiple injuries[1] when the car collided with a tree. Decedent was hospitalized as a result of these injuries and died there approximately five weeks later. An autopsy was performed by Dr. Brownlee, a deputy coroner, who testified that the immediate cause of death was a coronary occlusion which is more commonly known as a heart attack.

In prosecutions for negligent homicide, the Government must prove three

1. The autopsy revealed a brain injury and operation, fractured ribs and femur bone, broken thigh and pubic bone, and injury to chest and liver.

elements: (1) the death of a human being, (2) by instrumentality of a motor vehicle, (3) operated at an immoderate speed or in a careless reckless, or negligent manner, but not wilfully or wantonly.[2] Thus, the burden is upon the Government to show a causal connection between the injuries received in the accident by the decedent and his death, and, since this is a criminal proceeding, the causal connection must be proven beyond a reasonable doubt and not by mere conjecture and speculation.[3]

■ The only witness qualified to state the cause of death who testified was Dr. Brownlee. Although he stated that the injuries received in the accident were a factor in the decedent's death,[4] he modified that statement and it became apparent that he was unable to connect the decedent's injuries to his subsequent death.[5] Dr. Brownlee's testimony, considered in the light most favorable to the Government, merely established that the decedent's injuries placed him in a state of debility and that there was a possibility that this state of debility precipitated decedent's heart attack. The Government did not introduce testimony from any attending physician or other medical expert who had knowledge of the condition or treatment of the decedent during the five weeks he was in the hospital. Such testimony would have shown whether the state of debility did or did not cause or contribute to the heart attack. This missing link in the chain of causal connection between the injury and death of the decedent was not supplied by the uncertain testimony of the deputy coroner.

From Dr. Brownlee's testimony, it was equally probable that death was the result of natural causes[6] as it was of the injuries received in the accident, so that there is no evidence tending to exclude the hypothesis that the death of the deceased was due to such natural causes alone.[7] Therefore, in this case we find that the evidence was legally insufficient to prove that the de-

2. Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354 (1942); Sanderson v. United States, D.C.Mun.App., 125 A.2d 70 (1956); Ridgell v. United States, D.C. Mun.App., 54 A.2d 679 (1947).

3. Fine v. State, 193 Tenn. 422, 246 S.W.2d 70 (1952); Terry v. Commonwealth, 171 Va. 505, 198 S.E. 911 (1938); State v. Craig, 131 W.Va. 714, 51 S.E.2d 283 (1948).

4. Dr. Brownlee: "My opinion is that the injuries sustained on—the condition of the man, through his hospital course, and et cetera, probably led into—was a relative cause, or the factor to his subsequent acute myocardial infarction, or, heart attack."

5. "Q. Would you say that the injuries he received, that is, not the heart attack, hastened his death; made his death more—
"A. Well, certainly, the injuries that he received placed him in a state of debility, and *could* very well precipitate the ensuing event that ultimately led to his death.
"Q. * * * Did it [state of debility] cause this heart attack?
"A. I cannot say definitely that it did, as a prima facie, cause the death, or cause the heart attack.
"Q. How would you put it?

"A. Generally, that the debility he suffered from the time of receiving his injuries, certainly lends itself not to the point that it would enhance his health, and, therefore would—*could* very well have played a part in precipitating a heart attack. We know that, for instance, individuals who have heart disease; when these individuals are placed in a circumstance in which there is little or no activity, that their *chance* of demise is far greater than when they have some greater degree of activity. His injury placed him in such a circumstance." (Emphasis supplied.)
&ast; &ast; &ast; &ast; &ast;
"Q. In this case, taking what you found here, from your records. You would know the degree of breakage [injuries] in this case. Would they cause death in this case?
"A. No. I've stipulated that the cause of death in this man was acute myocardial infarction."

6. Dr. Brownlee also testified that most people who have heart attacks have some degree of arteriosclerosis (hardening of the arteries) and that this condition had been developing in decedent for a period of at least three years.

7. Terry v. Commonwealth, supra note 3.

**516**

cedent's death resulted from or was attributable to the injuries he received in the automobile accident.

Reversed with instructions to enter judgment of acquittal.