Commonwealth *v.* Odom, Appellant.

Submitted April 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Joseph A. C. Girone,* for appellant.

*Benjamin H. Levintow* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 4, 1972:

On February 1, 1969, Albert Schaab, age forty-three, was set upon and beaten by a group of young men. Appellant was a member of that group. They struck Schaab several times, dropped him to the ground and

kicked him in the head. Schaab was immediately taken to Philadelphia General Hospital, in a "semi-stuporous state." On April 8, 1969, sixty-seven days later, he died. On November 19, 1970, appellant, with counsel, waived a jury trial. The Commonwealth certified that the case would rise no higher than second-degree murder. At the conclusion of the trial, the trial judge found appellant guilty of second-degree murder. On December 31, 1970, after appellant's post-trial motions were withdrawn,[1] he was sentenced to a term of not less than two nor more than four years in the State Correctional Institution. Appellant has appealed from the judgment of sentence.

The sole issue raised on appeal is whether the Commonwealth proved beyond a reasonable doubt that Mr. Schaab's death was caused by the criminal assault in which appellant participated. Dr. Halbert Fillinger, the Medical Examiner, was the sole medical witness on this issue. He testified that the deceased "had a pre-existing condition of internal hydrocephalus," identified as "an increase in the amount of fluid and pressure inside the hollow spaces of the brain, and it is due to a narrowing or a closing of the small vents which allow fluid to circulate from inside of the brain to the areas around it." However, according to Dr. Fillinger, if that condition were not disturbed, "it would probably not be in and of itself lethal." The exact cause of death, according to Dr. Fillinger, was "ependymitis following internal hydrocephalus, due to multi-

---

[1] Appellant had filed post-trial motions in arrest of judgment and for a new trial. These motions having been withdrawn, there is really nothing for this Court to pass upon on this appeal, except the propriety of the sentence imposed. Appellant apparently is pursuing the motion in arrest of judgment which had been withdrawn on the date of sentence. The court below filed an opinion which treated the question raised on appeal on the merits, and we have also done so.

ple injuries of the head." Ependymitis was defined by Dr. Fillinger as an "inflammation of the linings of the cavities of the brain" which narrows the vents in the brain.

According to Dr. Fillinger's explanation, Mr. Schaab's pre-existing condition was aggravated by the serious beating which he received. The result was a blockage of these vents and a buildup of fluid and pressure on the brain which caused his loss of consciousness and swelling of the brain. To relieve this condition, a craniotomy was performed. That operation involved the opening of Schaab's skull and "the insertion of a small plastic tube (a shunt) which bypasses the blocked vents in the brain and allows the pressure which has built up inside the brain to be siphoned off. . . ." (Parenthetical material added.) As a result of the craniotomy, unfortunately, a staph infection developed in the deceased's brain. The infection further aggravated the ependymitis. The deceased's condition went generally downhill until he died eight days later.

The appellant, citing *Commonwealth v. Embry*, 441 Pa. 183, 272 A. 2d 178 (1971), and *Commonwealth v. Radford*, 428 Pa. 279, 236 A. 2d 802 (1968), contends that the testimony of the Medical Examiner was not sufficiently clear and unequivocal to establish the cause of death beyond a reasonable doubt. However, Dr. Fillinger's testimony was much more certain than that testimony held insufficient in *Radford* or *Embry*. In *Radford*, the physician's opinion as to causation was held to be insufficient because "at best his testimony indicate[d] that defendant's assault on the deceased *probably* caused the death." (Emphasis in original) *Radford, supra,* at 281. In *Embry,* the medical witness was only able to reconstruct the chain of causation with "a reasonable degree of medical certainty." *Embry, supra,* at 185.

Dr. Fillinger, in the instant case, did not limit the certainty of his opinion to "probably" or "with a reasonable degree of medical certainty." He stated the cause of death, unequivocally, as "ependymitis following internal hydrocephalus, due to multiple injuries of the head."

In arguing that proof of the cause of death was indefinite, the appellant emphasizes that, in the hospital records, the probable cause of death was listed as "septicemia, secondary to infected V. J. Shunt with probable brain abscess," referring to the final staph infection. However, there was no doubt in Dr. Fillinger's mind that the original assault, which caused the initial concussion and loss of consciousness necessitated "the surgical procedure, which allowed for the introduction of the bacteria." This chain of causation where death resulted after complications following treatment necessitated by a criminal assault on the decedent is similar to, though less remote than, the chain of causation found to be sufficient in *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A. 2d 291 (1966). In *Cheeks*, the victim was stabbed, requiring an operation. To prevent postoperative complications, tubes were inserted. The patient became disoriented and kept pulling out the tubes. He ultimately died from suffocating on material sucked into his lungs through the tubes.

As we said in *Cheeks*, citing *Com. ex rel. Peters v. Maroney*, 415 Pa. 553, 204 A. 2d 459 (1964), "one charged with homicide cannot escape liability merely because the blow he inflicted is not mortal, or the immediate cause of death." *Cheeks, supra,* at page 73.

Judgment of sentence affirmed.

Mr. Chief Justice JONES and Mr. Justice NIX concur in the result.