436 A.2d 680

**COMMONWEALTH of Pennsylvania**

v.

**Allen LOMAX, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1980.

Filed Oct. 30, 1981.

Jack J. Bulkin, Philadelphia, for appellant.

Cynthia Severinsen, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Appellant was convicted by a jury of involuntary manslaughter on May 1, 1979. Post-verdict motions were filed and denied. Lomax was sentenced to serve two and one-half to five years imprisonment. This appeal followed.

Lomax contends that the trial court erred in reaching its decision. First, he states that the evidence submitted to the trial court was insufficient to establish his guilt beyond a reasonable doubt. Second, he asserts the Commonwealth failed to sustain its burden of proving causation beyond a reasonable doubt. Third, he proclaims the court instructed the jury improperly. And, fourth, he claims the trial court erred in allowing a sequestered Commonwealth witness to testify in rebuttal after that witness was excused as a Commonwealth witness. We affirm the decision of the trial court.

The standard of review with regard to the sufficiency of the evidence is whether viewing the evidence and all reasonable inference arising therefrom, in a light most favorable to the Commonwealth, it was sufficient to establish appellant's guilt beyond a reasonable doubt. *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521 (1979); *Commonwealth v. Posavek*, 278 Pa.Super. 265, 420 A.2d 532 (1980). When the evidence in the instant case is so viewed, it discloses that Tameka Lomax, the infant child of appellant and Elizabeth Anderson, was born on December 4, 1973. She was two months premature and after her birth remained in the hospital until February of 1974. The record indicates that after Tameka came home, she was beaten by the appellant on numerous occasions, often with significant force. Appellant, apparently also strapped her to her crib with his belt on one occasion and on others pushed her head into her pillow.

On March 19, 1974, Ms. Anderson noticed her child was having difficulty breathing and, accordingly, she told Lomax she wanted to take Tameka to the hospital. He told Ms. Anderson nothing was wrong. Then, Ms. Anderson went into another room to wash diapers and suddenly heard sounds of something hitting against something else coming from the room occupied by appellant and the baby. Then, Lomax called to Ms. Anderson that the baby was not breathing.

Ms. Anderson rushed to her child, cleared Tameka's nose of food coming out of it, and began to supply her child with

air by mouth to mouth resuscitation. Tameka, however, did not respond. A rescue squad was called and it transported the child to a hospital. The baby never regained consciousness. The members of the rescue squad testified that appellant repeatedly stated while they attended to the child: "What have I done? What have I done?"

Ms. Anderson did not report Lomax to the police. She asserted that appellant instructed her to tell the police that the baby fell. She stated at trial that she followed Lomax's instructions because she was afraid he would beat her. However, Ms. Anderson states the appellant eventually admitted to her that he was responsible for the baby's death and Ms. Anderson then reported the incident to the police.

A medical examiner examined Tameka's body shortly after her death. He stated at trial that the child died because of injuries sustained by her which resulted from multiple, serious head injuries. The wounds evidently were sufficiently numerous that the examiner determined that they were caused over a period of time within the recent past and resulted from beatings. The examiner stated it was a combination of these injuries, not just those which were most recent which caused the child to die.

Ms. Anderson also stated at trial that Lomax beat her child on numerous occasions after she first came home from the hospital. Furthermore, while Ms. Anderson only heard two or three hitting sounds on the day the child died, it is reasonable to infer that the child was hit more often and, if not, that the child was beaten on a regular basis by the appellant. There is no evidence that Ms. Anderson or anyone else ever beat Tameka.[1] The evidence that Lomax repeatedly beat Tameka was corroborated at trial through the testimony of a neighbor, Ms. Stratham.

1. There is evidence that Ms. Anderson struck her child. However, she stated that at most she only tapped her child and never struck her a blow which could have resulted in any severe injury. She said she previously reported to the police that she had struck her child more severely but only said so to protect her husband. We see no reason to question the trial court's finding that Ms. Anderson had not beaten her child.

■ Appellant states that this evidence was insufficient to prove his guilt and specifically he claims the evidence was insufficient to prove he caused the child's death. First we are satisfied that the evidence that the multiple injuries caused the death and that Lomax repeatedly beat Tameka was sufficient to prove causation. *Commonwealth v. Howard*, 265 Pa.Super. 535, 537, fn. 1, 402 A.2d 674, 676 fn. 1 (1979).[2] And, second, we are convinced that there was

**2.** Appellant directs our attention to *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971), where our Supreme Court held that proof of causation was not established beyond a reasonable doubt where a physician was only able to state "with a reasonable degree of medical certainty" that a heart attack which killed a woman was caused by the physical and emotional stress associated with a purse snatching. There, the court said because the physician was unable to state that he was convinced beyond a reasonable doubt that the defendant caused the death that the Commonwealth had not satisfied its burden to prove causation. See also *Commonwealth v. Radford*, 428 Pa. 279, 236 A.2d 802 (1968) (holding proof of causation must be established beyond a reasonable doubt).

Here, the medical examiner stated:

In my opinion, the number of injuries, the distribution of the injuries on the body, the fact there are injuries that represent a fresh series of traumatic situations as well as injuries that represent at least two other episodes of trauma in the past, clearly indicate that this child has been beaten repeatedly and in my opinion, the injuries sustained caused the death resulting from a beating.

Clearly, the medical testimony in the instant case is stronger than in *Commonwealth v. Embry*, supra. We hold this evidence, when coupled with appellant's expression of guilt to the rescue squad members and the corroborating evidence supplied by Ms. Anderson's neighbor, was sufficient to prove causation.

Lomax also contends that the child's death resulted from falls from her bed. However, the medical testimony indicated Tameka's death was caused by repeated beatings. Ms. Anderson severely damaged the appellant's credibility when she testified that appellant told her to say the child died as a result of a fall. Furthermore, Ms. Anderson's version of the facts surrounding the child's death were corroborated by her neighbor, at least, to the extent of her contention that Lomax repeatedly beat the child.

Appellant claims the child was killed by aspiration, not beating, and therefore causation was not proved beyond a reasonable doubt. He claims the aspiration was caused by Ms. Anderson's feeding the child baby food liver. However, the medical testimony indicated that the aspiration was not the cause of death. Even if we were to consider aspiration, the immediate cause of death, we are satisfied that the chain of causation was properly proved. *Commonwealth v. Green*, 477 Pa. 170, 383 A.2d 877 (1978); *Commonwealth v. Robin-*

sufficient evidence to establish appellant's guilty beyond a reasonable doubt. *Commonwealth v. Turner*, 491 Pa. 620, 421 A.2d 1057 (1980).

Next, appellant asserts the trial court erred in its charge to the jury. First, he remonstrates that the court improperly refused to instruct the jury that the Commonwealth must establish a causal link between appellant's acts and Tameka's death by medical testimony. This claim is clearly contradicted by the record. We agree with the trial court when it said:

> Defense counsel has alleged that the trial judge erred in refusing defense counsel's requested points for charge regarding causation. Defense counsel has cited case law for the proposition that the Commonwealth must prove every essential element of a crime beyond a reasonable doubt. He goes on to state that since causation is an essential element to a charge of homicide, causation must be proven beyond a reasonable doubt. This is undisputed, and was covered in the charge to the jury as follows: (N.T. Pp. 30, 31, 32, 35, 36–37, Vol. 4)
>
> At Page 30:
>
> > "In order to find the defendant guilty of murder of the third degree, you must find that all of the following elements have been established beyond a reasonable doubt: One, that the defendant or an accomplice caused the death of another person. That is, you must find that the death of the victim would not have occurred but for the defendant's or an accomplice's act."
>
> At Page 31:
>
> > "If, after considering all of the evidence, you find that the Commonwealth has established each of these elements beyond a reasonable doubt, you may find the defendant guilty of murder of the third degree."
>
> At Page 32:

son, 468 Pa. 575, 364 A.2d 665 (1978); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Carn*, 449 Pa. 228, 296 A.2d 753 (1972).

"Voluntary manslaughter exists where there was an intentional act which caused the death..."

At Page 35:

"I will define involuntary manslaughter: In order to find the defendant guilty of involuntary manslaughter, you must find that all of the following elements have been established beyond a reasonable doubt: One, that the defendant unintentionally caused the death of another person. Two, that the death was a direct result of the defendant's act.

The defendant is not liable unless his act was the direct cause of death. However, there may be more than one direct cause of death."

At Pages 36–37:

"If, after considering all of the evidence you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find the defendant guilty of involuntary manslaughter.

If you do not so find, you should find the defendant not guilty of involuntary manslaughter."

The record clearly shows that the trial judge's charge fully instructed the jurors that the Commonwealth had to prove the element of causation beyond a reasonable doubt. (Trial court opinion at pages 17–18). We are satisfied that the trial court properly instructed the jury as to the Commonwealth's burden of proof. *Commonwealth v. Newkirk*, 455 Pa. 559, 317 A.2d 216 (1974); *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977) (Commonwealth has burden of proof of proving beyond a reasonable doubt each element of the crime for which defendant is charged).

 Appellant also claims the trial court should have charged the jury that it must find the appellant's actions were the direct cause of Tameka's death and that no intervening cause existed. However, as the trial court found, there was no evidence that an intervening cause existed. *Commonwealth v. Green*, 477 Pa. 170, 175, 383 A.2d 877, 880 (1978) (Commonwealth is "not required to prove that a 'hypothetical supervening event' did not take place [citation

omitted]).[3] The trial court is not required to give instructions regarding the possible existence of an intervening cause when there is no evidence which indicates that such a cause existed. See *Commonwealth v. Nesbitt*, 276 Pa.Super. 1, 419 A.2d 64 (1980); *Commonwealth v. Knox*, 273 Pa.Super. 563, 417 A.2d 1192 (1980); *Commonwealth v. Reiff*, 489 Pa. 12, 413 A.2d 672 (1980).

■ Then, Lomax contends that the trial court erred in its use of the word "accomplice" in its charge to the jury regarding murder. However, the word "accomplice" was never used in the trial court's instructions to the jury on involuntary manslaughter. Keeping in mind that the appellant was convicted of involuntary manslaughter alone and not first, second or third degree murder, where the term accomplice was used, we are unable to see how the appellant was harmed. We find that any error which existed in instructing the jury in the general murder charge using the term "accomplice" was cured when the trial court instructed the jury regarding involuntary manslaughter and did not use the word "accomplice." Thus, any possible error was harmless.[4]

■ Appellant's ultimate contention is that: "THE TRIAL COURT ERRED IN ALLOWING THE COMMONWEALTH'S MAIN WITNESS WHO HAD BEEN PREVIOUSLY SEQUESTERED TO TESTIFY IN REBUTTAL AFTER SHE HAD BEEN EXCUSED AS A COMMONWEALTH WITNESS." (Appellant's brief, page 21.) Specifically, appellant states that Ms. Anderson should not have been permitted to testify in rebuttal to evidence submitted

**3.** Medical testimony unequivocally stated that aspiration was not the cause of death (see footnote 1). Thus, we believe the trial court acted properly in holding there was no evidence that an intervening cause existed.

**4.** It is also apparent that Ms. Anderson clearly undertook no actions which would have fatally harmed her child. As such, there is no concernable way that the jury could have convicted Lomax as an accomplice, where Ms. Anderson could not have been convicted as a principal.

by Geneva Gunther, who testified that Ms. Anderson told her Tameka's death was caused by a fall. Gunther also stated Tameka had fallen from bed once while she was baby-sitting. The error appellant asserts results because a sequestration order was in effect concerning Ms. Anderson who allegedly remained in the courtroom while Ms. Gunther testified. However, appellant indicates that Ms. Anderson may not have been in the courtroom during Ms. Gunther's testimony. (Appellant's brief, page 22.) The trial court found that Ms. Anderson was not in the courtroom at that time, though there is evidence that she was in the courtroom at other times, in violation of the sequestration order.

First, we note, apart from the sequestration issues, that the use of rebuttal in this situation, though Ms. Anderson had repeatedly stated she never struck her child a severe blow and that her child had not fallen from her bed, was proper. Ms. Anderson was given the opportunity to rebut because Ms. Gunther alleged specific circumstances when and where Ms. Anderson had supposedly abused her child. Ms. Anderson testified in response to each particular situation. Under these circumstances, the trial court did not abuse its discretion in allowing rebuttal testimony. *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980); *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978); *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973).

Second, we recognize that a trial court has broad discretion to remedy any possible violation of a sequestration order. *Commonwealth v. Smith*, 464 Pa. 314, 346 A.2d 757 (1975); *Commonwealth v. Martin*, 277 Pa.Super. 323, 419 A.2d 793 (1980). We hold that the trial court did not abuse its discretion in the instant case, both because Ms. Anderson was apparently not present during the testimony sought to be rebutted and because the rebuttal itself was properly submitted.

Accordingly, the judgment of sentence of the trial court is affirmed.