487 A.2d 830

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Leroy COTTON, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed Dec. 21, 1984.

Reargument Denied Feb. 21, 1985.

Petition for Allowance of Appeal Denied
July 30, 1985.

22

A. Charles Peruto, Jr., Philadelphia, for appellant.

Thomas Quinn, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, McEWEN and CIRILLO, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment of sentence imposed by the Common Pleas Court, Philadelphia County on June 29, 1982. After a non-jury trial, appellant, Leroy Cotton, was found guilty of murder in the second degree, robbery, and criminal conspiracy.[1] On appeal, Cotton maintains that the evidence was insufficient to show the causation element of second degree murder. Appellant contends that as a matter of law, the Commonwealth's evidence was insufficient to show that the victim's death occurred from his conduct while in the commission of an alleged robbery. Appellant also claims that the evidence was insufficient to support the robbery conviction thus nullifying the basis for the felony murder conviction. In addition, appellant argues that both trial and post-trial counsel provided ineffective assistance. These claims include failure to preserve meritorious issues for appellate review, failure to call character witnesses, and calling appellant to the stand before other defense witness-

1. 18 Pa.C.S. §§ 2502, 3701, 903.

24

es. We disagree with appellant's contentions and, therefore, affirm the lower court.

The convictions arise from events that transpired on March 20, 1980 near 16th and Blavis Streets in Philadelphia. An eyewitness, Shirley Brockington, saw appellant, Leroy Cotton, and two other males in an altercation with Mr. Longin Markiw. Miss Brockington testified that the two unnamed men were standing on either side of Mr. Markiw while appellant struck the victim in the chest. The two men wrestled Mr. Markiw to the ground. One of the three men ripped a rear pocket on Mr. Markiw's trousers. After the assailants fled the scene, Miss Brockington went to give assistance to the victim. She testified that Mr. Markiw appeared to be sick and that he was holding his chest and his pants pocket. Miss Brockington then walked the victim first to her house and then to his own home. Shortly thereafter, the police arrived at Mr. Markiw's home. Another policeman, Officer Kiefer, arrived to transport Mr. Markiw to Northwest Detectives. At trial, one of the officers described Mr. Markiw as "ashen faced." Officer Kiefer testified that Mr. Markiw appeared to be perspiring and in pain "all around his chest." As a result, he took the victim to Temple University Hospital. At the emergency ward, staff members told the officer that the victim might be having a heart attack. Mr. Markiw was admitted to the hospital where he died five days later.

Kenneth E. Carpenter, M.D., testifying for the Commonwealth, stated that the stress of the incident aggravated Mr. Markiw's heart disease, triggering a heart attack causing his death and stated his opinion with "reasonable medical certainty." He also testified that the cause of death was heart disease aggravated by assault and robbery. On the autopsy report, Dr. Carpenter indicated that Mr. Markiw had suffered a heart attack anywhere from four to eight days prior to his death.

 Dr. Carpenter's testimony and his autopsy report were the only direct evidence offered by the Commonwealth to prove causation. Appellant claims that this was insuffi-

cient to show that Mr. Markiw's death resulted from the alleged robbery. In deciding an insufficiency claim, this Court is bound to view all evidence in the light most favorable to the Commonwealth and to draw all reasonable inferences in its favor. *Commonwealth v. Keblitis*, 500 Pa. 321, 456 A.2d 149 (1983); *Commonwealth v. Martin*, 481 Pa. 515, 393 A.2d 23 (1978). We also note that circumstantial evidence is sufficient to convict beyond a reasonable doubt. *Commonwealth v. Scudder*, 490 Pa. 415, 416 A.2d 1003 (1980).

■■■■ Once the Commonwealth submitted evidence of causation, it was for the factfinder to determine if that evidence proves the element of the crime charged beyond a reasonable doubt. Merely because Dr. Carpenter's opinion was cast in terms of a reasonable medical certainty, this Court cannot say, as a matter of law, that causation was not proved beyond a reasonable doubt. As pointed out by Justice O'Brien.

> It was not necessary, as appellants contend, that the witness state it was his conclusion beyond a reasonable doubt ... "beyond a reasonable doubt" is a legal standard. Medical causation and legal causation are qualitatively different in their application ... whether the Commonwealth's evidence is sufficient to warrant a finding of causal connection is initially a legal question for the court, but whether it is persuasive beyond a reasonable doubt is for the jury to say.

*Commonwealth v. Webb*, 449 Pa. 490, 496, 296 A.2d 734, 737 (1972). Furthermore, it would be an undue burden to require the Commonwealth's medical experts to state their opinions that death resulted from a specific cause "beyond a reasonable doubt." That concept is a legal standard that the factfinder must use in determining guilt.[2]

2. It is true, as the dissent points out, that our Supreme Court in *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971), stated that "when only one witness is presented by the Commonwealth to establish causation and that witness cannot do so beyond a reasonable doubt, a necessary element of the proof of that crime is missing." The *Embry* decision relied on an earlier case, *Commonwealth v. Radford,*

Dr. Carpenter's opinion finds support in the record and the hypothetical question asked of him was proper. It conformed to the facts as supported in the record, and the appellant will not now be heard to complain that the hypothetical question failed to conform to the facts as he made no objection to that effect at trial. P.L.E. Appeals § 110. We shall not presume to invade the jury's traditional fact finding function and hold that the opinion based on this hypothetical question was improper. Dr. Carpenter's testimony showed that the cause of death was heart disease aggravated by the assault and robbery. The Commonwealth also provided testimony regarding the victim's condition immediately after the incident. In view of this, we cannot say, as a matter of law, that the factfinder had

428 Pa. 279, 236 A.2d 802 (1968) where a physician testified to "a reasonable degree of medical certainty" that a heart attack was caused by stress occasioned by a purse snatching and ensuing struggle. In both cases, causation was found to be lacking. A reading of the Pennsylvania cases leads to the conclusion that the broad language of *Embry* is of doubtful precedential value especially in light of the *Webb* decision. For example, in the following cases *Embry* and/or *Radford* were distinguished and in no other case has the requirement been made that the expert medical testimony be couched in terms of "beyond a reasonable doubt." *Commonwealth v. Roberson,* 485 Pa. 586, 403 A.2d 544 (1979); *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Green,* 477 Pa. 170, 383 A.2d 877 (1978); *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978); *Commonwealth v. Vogel,* 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976); *Commonwealth v. Nole,* 448 Pa. 62, 292 A.2d 331 (1972); *Commonwealth v. Amato,* 449 Pa. 592, 297 A.2d 462 (1972); *Commonwealth v. Odom,* 448 Pa. 474, 295 A.2d 331 (1972); *Commonwealth v. Lomax,* 291 Pa.Super. 635, 436 A.2d 680 (1981); *Commonwealth v. Alston,* 269 Pa.Super. 573, 410 A.2d 849 (1979); *Commonwealth v. Rawls,* 270 Pa.Super. 432, 411 A.2d 796 (1979).

Most recently, in *Commonwealth v. Floyd,* 499 Pa. 316, 453 A.2d 326 (1982), our Supreme Court concluded that the opinion of a medical examiner expressed in terms of a reasonable degree of medical certainty was adequate evidence in the record of causation for the finder of fact to conclude beyond a reasonable doubt that the cause of death was a criminal act. Importantly, *Floyd* can be read as having overruled *Embry*. In reaching its conclusion it followed *Commonwealth v. Webb, supra,* and added: "We believe that the *Webb* court was in error in distinguishing *Embry*." 499 Pa. 316 at 320, 453 A.2d 326 at 328.

insufficient evidence to establish the cause of death beyond a reasonable doubt.

To hold otherwise would be a judicial usurpation of the jury's function. Also, the evidence of robbery in this case was clearly sufficient to support appellant's conviction.

In considering appellant's claims of ineffectiveness of trial and post-trial counsel for failing to preserve issues for appellate review, this Court uses a two-step analysis. First, we must determine if the issues not preserved were of arguable merit, and if so, we then determine if counsel's decisions had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Burton*, 491 Pa. 13, 417 A.2d 611 (1980); *Commonwealth v. Manigault*, 501 Pa. 506, 462 A.2d 239 (1983). Obviously, counsel will not be ineffective for failing to preserve a baseless claim. *Commonwealth v. Giknis*, 491 Pa. 215, 420 A.2d 419 (1980); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Appellant's initial claim of ineffectiveness is that both trial and post-trial counsel failed to preserve for review a motion to dismiss pursuant to Pa.R. Crim.P. 1100. Considering that appellant's trial began 378 days after the complaint was filed, a Rule 1100 motion to dismiss may have been appropriate. On the other hand, a defendant may waive his right to a speedy trial and this is precisely what appellant did on two occasions. The colloquy conducted by the Honorable Paul Ribner at both proceedings, demonstrates that appellant made an informed and voluntary decision. *Commonwealth v. Myrick*, 468 Pa. 155, 360 A.2d 598 (1976). Consequently, neither trial or post-trial counsel were ineffective for failing to preserve a Rule 1100 motion.

Appellant also alleges that trial and post-trial counsel were ineffective for failing to preserve for review the decision to waive a jury trial. In reviewing the record, it is clear that appellant made a knowing, voluntary and intelligent waiver of his jury trial right. The record shows that the waiver colloquy was in accord with the standards set

28

forth in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973).

Appellant also alleges ineffectiveness for failure to preserve several evidentiary questions for appellate review. First, appellant contends that counsel should have preserved an objection to hearsay testimony. Specifically, this concerns the testimony of two police officers who were at the hospital shortly after Mr. Markiw arrived. The officers testified that they were told by hospital personnel that the victim was suffering a heart attack. However, this testimony related to facts not capable of dispute and could not have prejudiced appellant. Secondly, appellant maintains that counsel should have preserved an objection to the lower court's restriction of cross-examination. The trial judge did not permit cross-examination that would have required Dr. Carpenter to speculate whether Mr. Markiw would have suffered a heart attack absent the robbery. In view of the fact that counsel was permitted to strenuously cross-examine the Commonwealth's witnesses, we find no abuse of discretion where the court prevented this kind of speculation. *See Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *Commonwealth v. Paskings*, 447 Pa. 350, 355, 290 A.2d 82 (1972). Lastly, appellant contends that counsel should have preserved an objection to Dr. Carpenter's conclusion regarding the manner of death. This issue is without merit, because the opinion of an expert may be based on the facts admitted or proven or on reports admitted into evidence. *Commonwealth v. Haddle*, 271 Pa.Super. 418, 413 A.2d 735 (1979). The record indicates that Dr. Carpenter's opinion was based on admitted evidence.

After a careful review of the record with regard to the remaining issues appellant claims should have been preserved, we find that these issues are without merit and

trial counsel and post-trial counsel were not ineffective for failing to preserve them.[3]

In addition, appellant raises two issues of trial counsel's ineffectiveness. These claims are waived, however, since new post-verdict counsel failed to raise them. *Commonwealth v. Lee*, 254 Pa.Super. 495, 386 A.2d 59 (1978).[4]

Lastly, appellant alleges that post-trial counsel was ineffective for failing to raise the ineffectiveness of trial counsel. This claim is not supported by the record, since post-trial counsel did in fact raise the ineffectiveness of trial counsel in post-verdict motions.

Judgment of sentence affirmed.

McEWEN, J., files concurring opinion.

CIRILLO, J., files concurring and dissenting opinion.

McEWEN, Judge, concurring:

The able and certain expression of view provided by our esteemed colleague Judge James R. Cavanaugh quite perceptively distinguishes between the concept of reasonable medical certainty and the legal notion of reasonable doubt before concluding beyond question that there was sufficient evidence that robbery was the cause of the homicide to enable a jury to conclude that appellant was guilty of

---

**3.** Appellant argues that counsel should have preserved an objection to the sufficiency of the bill of information charging him with murder. However, we find that the bill in question did serve to notify the accused of the charges against him. *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982). Appellant also alleges that counsel should have preserved a challenge to the Commonwealth's failure to provide putative exculpatory material. However, we find that no prejudice would have resulted from this since trial counsel used the information from this material to impeach a Commonwealth witness. Similarly, appellant's contention that counsel should have preserved an objection to the court's granting a continuance is without merit. The granting of a continuance is within the discretion of the trial judge and we do not find that Judge Stout abused her discretion. *Commonwealth v. Rainey*, 271 Pa.Super. 240, 412 A.2d 1106 (1979).

**4.** Even though these issues have been waived, we find that they are without merit. Appellant alleged that trial counsel failed to call character witnesses, but there is nothing to indicate that counsel had knowledge of any witnesses or that they even existed. *Commonwealth v. Brinton*, 303 Pa.Super. 14, 449 A.2d 54 (1982).

murder. I share that conclusion and write simply to provide emphatic rejection of this particular assertion of appellant.

The word "prey" is defined by Webster as one who is helpless or unable to resist attack. It was shortly after darkness had fallen that the victim, a 70 year old man measuring just over five feet and 145 pounds, became prey for three predators, all of them young men and one of them appellant. The victim, as has been noted, had been suffering from arteriosclerotic heart disease and the postmortem reveals that the cause of death was arteriosclerotic heart disease aggravated by assault and battery.

The argument of appellant would permit the very disability which caused the victim to become prey to be the basis by which the predator escapes responsibility for the killing. The disability of the victim was the trigger for the crime. We cannot permit it to be the excuse for the crime.

When a gun is fired and causes a death during the commission of an armed holdup, the law declares the killing to be a felony-murder and rejects the protests of the robber that he had no intention to kill, since such a killing was a clearly foreseeable result of an armed holdup. The death of an elderly victim in the choke of a mugger is every bit as foreseeable and, therefore, no less a felony murder.

I agree there is no merit to the remaining contentions of appellant and would affirm the judgment of sentence.

CIRILLO, Judge, concurring and dissenting:

I respectfully differ with the majority in that I would find the evidence insufficient to prove beyond a reasonable doubt that appellant caused Mr. Markiw's death, and would therefore reverse appellant's conviction for second-degree murder. I would affirm the sentence for conspiracy and remand for resentencing on the robbery conviction, since the sentence for robbery merged with the life sentence for second-degree murder.

The test for sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all proper inferences favorable to the Commonwealth, the trier of fact could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149 (1983).

In a criminal homicide case, an essential element the Commonwealth must prove beyond a reasonable doubt is that the defendant's criminal acts caused the victim's death. *Commonwealth v. Hicks,* 466 Pa. 499, 353 A.2d 803 (1976); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). It is not sufficient that death *probably* resulted from a criminal agency. *Commonwealth v. Radford,* 428 Pa. 279, 236 A.2d 802 (1968).

Furthermore, the Commonwealth must prove a *direct* causal relationship between the defendant's acts and the victim's death; tort concepts of "proximate cause" have no place in a prosecution for criminal homicide. *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961).

I believe the evidence did not establish beyond a reasonable doubt a direct causal relationship between appellant's admittedly reprehensible acts and Mr. Markiw's unfortunate death. Witnesses testified that shortly after the assault Mr. Markiw appeared "ashen faced," and was perspiring and holding his chest, where he had been hit by one of the robbers. However, he was still fully conscious and ambulatory when, owing to a policeman's solicitude, he was driven to Temple University Hospital. A conspicuous hiatus in the Commonwealth's evidence follows, for there is nothing in the record concerning Mr. Markiw's state from the time he entered the hospital until he died five days later. No doctor testified that Markiw exhibited symptoms of a heart attack when he arrived at the hospital; no medical witness described Markiw's course of treatment or the process of his physical deterioration. The Commonwealth attempted to fill this gap in the evidence with the testimony of the medical examiner who performed an autopsy on the

32

body. This witness, Dr. Carpenter, stated that Mr. Markiw had suffered from severe heart disease, and was at the time of the attack "an already compromised human being." He further testified that the cause of death was a heart attack occurring four to eight days before death. In response to a hypothetical question involving the facts of the robbery, the witness stated his opinion to a reasonable degree of medical certainty that the incident had induced stress so severe as to result in Markiw's death.

This case is virtually indistinguishable from *Commonwealth v. Embry*, 441 Pa. 183, 272 A.2d 178 (1971), where a seventy-one-year-old woman with a long history of coronary artery disease and prior heart attacks became the victim of a purse-snatching and died of a heart attack. The expert witness who had performed the autopsy opined to a reasonable degree of medical certainty that the victim's struggle with the robbers produced stress which caused the heart attack, but testified he was not convinced of this beyond a reasonable doubt. The Supreme Court held there was insufficient evidence of causation: "when only one witness is presented by the Commonwealth to establish causation and that witness cannot do so beyond a reasonable doubt, a necessary element of the proof of that crime is missing." *Id.*, 441 Pa. at 186, 272 A.2d at 179. *Accord, Radford, supra.*

It is true, as the majority points out, that an expert medical witness need not state his opinion about the cause of death in terms of "beyond a reasonable doubt." *Commonwealth v. Webb*, 449 Pa. 490, 296 A.2d 734 (1972). An expert witness need only entertain a reasonable degree of medical certainty for his conclusions. *Commonwealth v. Floyd*, 499 Pa. 316, 453 A.2d 326 (1982); *cf. Commonwealth v. Richardson*, 307 Pa.Super. 191, 452 A.2d 1379 (1982) (citing *Embry* for this principle). However, it remains a legal question for the court whether the Commonwealth's evidence is sufficient to warrant a finding of causal connection, *Webb supra,* and it remains the Commonwealth's burden to prove this causal connection *beyond a reasonable*

*doubt.* *Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978).

Here the only thing about Mr. Markiw's death established beyond a reasonable doubt was heart attack as the cause. It was shown, and undisputed, that Markiw had suffered from severe heart disease. The autopsy revealed scarring of the heart, presumably indicating that the heart attack leading to Markiw's death had not been his first. However, the record is absolutely silent as to Markiw's condition or treatment either immediately before the assault or after his admission to the hospital. Therefore, Dr. Carpenter's professional opinion that Markiw's fatal heart attack occurred between four and eight days prior to death is of little use in establishing the assault as the cause of the heart attack. Taking this opinion into account, the evidence would support the inference that Markiw's heart attack arose from natural causes before or after the robbery just as easily as it would support the inference that it arose contemporaneously with the robbery and because of it. There is, indeed, nothing in the record but conjecture to rule out the inference that this "already compromised human being" suffered his heart attack prior to and independently of the mugging. At most, the evidence establishes that the assault "probably" caused the heart attack; to conclude that the assault *in fact* was the cause, the fact finder would have to engage in speculation. Nevertheless, on this evidence Dr. Carpenter was allowed to superimpose his own opinion that the assault had caused the seizure. Whereas Dr. Carpenter's opinion that death was due to a heart attack was based directly on his own observations, his opinion as to the cause of the heart attack was based on a hypothetical version of the facts of the robbery supplied by the district attorney. No matter that Dr. Carpenter expressed this latter opinion in terms of a "reasonable medical certainty"; in my view this was nothing more than the doctor substituting his own speculation and conjecture for that of the fact finder.

34

In a homicide case, where the life or liberty of a citizen is at stake, and where the guilt of the accused must be established beyond a reasonable doubt, the causal connection between the death of the decedent and the unlawful acts of the respondent cannot be supported on mere conjecture and speculation.

*Fine v. State*, 193 Tenn. 422, 428, 246 S.W.2d 70, 72 (1952) (quoting *State v. Rounds*, 104 Vt. 442, 457, 160 A. 249, 254 (1932)).

Where it is equally possible and probable that the death resulted from one cause as from another cause and the defendant is not responsible for one of the causes, then any determination of the cause of death can only be speculative and conjectural and the evidence will be held insufficient to support a guilty verdict.

*Rucker v. State*, 174 Tenn. 569, 573, 129 S.W.2d 208, 210 (1939).

My learned colleague Judge Stephen J. McEwen, Jr., cogently makes the point that it is no excuse to criminal homicide that the victim's life was fragile even before the defendant's criminal assault extinguished it. I don't dispute this; it is a settled principle that an assailant must take his victim as he finds him. As stated in *Commonwealth v. Hicks*, 483 Pa. 305, 313, 396 A.2d 1183, 1187 (1979),

An accused may not escape criminal liability on the ground that, prior to the criminal act, his victim was not in perfect health, or the blow he inflicted was not mortal, or the immediate cause of death. If his blow started the chain of causation which led to the death, he is guilty of homicide. *Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 805 (1976).

However, the fact that the victim had poor health does not dispense with the need to establish beyond a reasonable doubt a "chain of causation" leading from the defendant's crime to the victim's death. "In a death as distinguished from a 'killing,' the prosecution must prove an absence of natural causes. That is, the first step is to prove the victim

died because he was killed." *Welch v. State,* 45 Ala.App. 657, 235 So.2d 906, 907 (1970).

A comparison of various cases in which heart attack deaths were prosecuted as homicides will serve to illustrate what is and what is not an adequate "chain of causation" to establish that the victim was killed. In *Commonwealth v. Hicks,* 483 Pa. 305, 396 A.2d 1183 (1979), the victim collapsed and fell unconscious immediately after wrestling strenuously with Hicks, who in a craze had broken into the victim's house and accosted him. The victim never regained consciousness, and died of *"acute* cardiac failure due to a pre-existing arteriosclerotic heart disease which was aggravated by the severe stress of his struggle with [Hicks]." 483 Pa. at 309, 396 A.2d at 1185 (emphasis added). The Supreme Court rejected a challenge to the proof of causation, saying it was "clear" the defendant's attack had cause the victim's cardiac failure. *Id.,* 483 Pa. at 313, 396 A.2d at 1186. *See also State v. McKeiver,* 89 N.J.Super. 52, 213 A.2d 320 (1965) (evidence sufficient where victim dropped dead in bar during armed holdup).

With the immediate and clear chain of causation in *Hicks,* compare that in *Stevens v. United States,* 249 A.2d 514 (D.C.App.1969). There the decedent was afflicted with "developing" arteriosclerosis. He was injured in an automobile accident caused by the defendant, and hospitalized. Five weeks later he died in the hospital of a heart attack. There was expert medical testimony that the debility caused by the accident could have precipitated the heart attack from which the decedent died. The court found the proof of causation insufficient, noting that the Government had produced no testimony from an attending physician or expert who had knowledge of the decedent's condition while in the hospital. The defendant's conviction for negligent homicide was reversed.

Certainly the present case bears a closer resemblance to *Stevens* than to *Hicks* or *McKeiver,* in that Mr. Markiw did not die immediately, but spent a period of time in the hospital before succumbing. As in *Stevens,* the decedent's

condition during the period of hospitalization went totally unexplained on the record. The victim in *Stevens* lingered five weeks before dying, whereas in this case the period was five days. However, the length of time between incident and death is only one factor to consider in deciding the overarching question: whether the prosecution has sufficiently established a chain of causation.

In at least one case, our Supreme Court has found the evidence insufficient to prove causation where death was immediate. *Commonwealth v. Embry, supra. See also Hubbard v. Commonwealth,* 304 Ky. 818, 202 S.W.2d 634 (1947). In *Hubbard,* the defendant was arrested for drunkenness, but resisted the decedent's efforts to lead him to jail. The would-be jailer, Dyche, struggled with Hubbard until Dyche fell to the ground. As others subdued the defendant, Dyche, who suffered from a heart condition, sat on the ground with his hand on his chest. Rather than continue to sit and rest, however, Dyche got down on the ground and "rolled and tumbled" until he died about half an hour later. Despite opinion testimony from three physicians that the scuffle and its attendant stress precipitated Dyche's death, the Court of Appeals of Kentucky held the evidence insufficient to support Hubbard's homicide conviction:

> In the present case the misdemeanor of the defendant must be regarded as too remote—not in time, to be sure, but as the cause. The failure of the man's diseased heart was the cause. *Livingston v. Commonwealth,* 14 Grat., Va., 592. . . . It is, at least, speculative to say that the act of the defendant in this case was sufficiently proximate to impose criminal responsibility upon him for the unfortunate death. We are of opinion, therefore, that the court should have directed an acquittal.

304 Ky. at 822, 202 S.W.2d at 637.

Regardless of the time span involved, the principle is clear that the Commonwealth must establish a direct and

*unbroken* chain of causation between the defendant's criminal acts and the victim's death. *See, e.g., Commonwealth v. Roberson,* 485 Pa. 586, 403 A.2d 544 (1979) (beating to head leading to fatal pneumonia); *Commonwealth v. Green,* 477 Pa. 170, 383 A.2d 877 (1978) (gunshot wound required removal of kidney; victim died in hospital of vomit sucked into lungs); *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973) (victim beaten in head died ten days later after brain surgery); *Commonwealth v. Odom,* 448 Pa. 474, 295 A.2d 331 (1972) (victim died of head injuries sixty-seven days after beating); *Commonwealth v. Jefferson,* 445 Pa. 1, 281 A.2d 852 (1971) (stabbing led to blood clots causing death); *Commonwealth v. Cartagena,* 272 Pa.Super. 485, 416 A.2d 560 (1979) (stabbing leading to paralysis and death).

Here there is an important link missing from the chain: proof that appellant's acts started the process leading to death. Dr. Carpenter's opinion in response to a hypothetical question that the robbery caused the heart attack may establish a possible, even a probable, causal relationship between the two. However, this opinion evidence was not sufficient to establish a causal relationship *in this particular case* beyond a reasonable doubt. Given the paucity of evidence upon which the opinion was based, I would hold it insufficient regardless of the degree of certainty with which the expert expressed it. *Cf. Commonwealth v. Rawls,* 270 Pa.Super. 432, 411 A.2d 796 (1979) (defendant punched victim in head; victim died of subdural hemorrhage; evidence sufficient despite medical examiner's inability to say with certainty that fist punch in fact caused hemorrhage). Although it is of course possible that appellant Cotton caused Markiw's death by heart attack, I believe the evidence was too tenuous and speculative to establish this causal connection, or to visit upon Cotton the consequences of murder.