Commonwealth *v.* Kaufman, Appellant.

Argued September 35, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Sidney Ginsberg,* with him *Isadore A. Shrager,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with him *James N. Lafferty,* Deputy District Attorney, *Victor H. Blanc,* District Attorney, and *Vincent G. Panati,* First Assistant District Attorney, for appellee.

OPINION BY GUNTHER, J., November 15, 1956:

This is an appeal from the conviction and sentence for the crime of arson which arose in the City of Philadelphia. Appellant, Louis Kaufman, was charged and convicted by a jury of setting fire to a warehouse leased by Furniture Fair, Inc., in which he owned one-third of the capital stock and approximately one-fourth of the voting stock. Furniture Fair, Inc., was engaged in the retail sale of furniture at Market Street in the City of Philadelphia, and for the storage of its furniture stock, it leased a warehouse located at 5407-09 Wyalusing Avenue.

In the late morning of Saturday, August 23, 1952, a fire broke out in the warehouse on Wyalusing Avenue. The alarm was received by Engine Company No. 65 of the Philadelphia Fire Department at 11:52 A.M., and within the space of a minute the firemen were at the scene of the fire which was about two blocks away from the engine house. Immediately upon arrival, a one inch and a two inch water line were stretched, and, with the aid of a ladder company, forcible entry was made into that warehouse. The warehouse was a large, one-story building with slanting roof and several large skylights. Entrance to the warehouse was made through a small door forming a part of a sliding door covering the front of the warehouse.

Captain DiRomaldo, the first officer to arrive from the fire department, testified that one of his men en-

tered the warehouse through the small door and then opened the sliding door so as to expose the entire front of the furniture warehouse. He further testified that he and his men fought "four or five unconnected fires" which were "coming from the floor up." He was unable to see these separate fires at one and the same time because of the dense smoke, but came upon each fire as he and his men advanced further into the warehouse. Under cross-examination, he reiterated that he and his men had to fight four or five "individual fires" spreading up from the floor. He was asked if these fires could have been caused by sparks from a single fire leaping from one place to another. He replied that while such was possible, he did not consider that probable because the base of all these fires was at the floor area, and if the fires had been caused by leaping sparks, they would have been burning from the top and not from the bottom.

Captain DiRomaldo also testified that he saw "from about eight to ten" sulphur candles partially consumed at some time but that during the entire performance of his duties in extinguishing the fires he could not detect the odor of any sulphur dioxide, thereby inferring that the sulphur candles were not burning during the conflagration.

The next witness, Captain Putz, testified that he came to the scene with a ladder company and went immediately to the roof of the building to ventilate the burning warehouse and in order to rid it of the smoke and fumes. He and his men broke a skylight and placed a one inch water hose down into it. He was able to see little flecks of fire around the ventilators that had come off but, because of the smoke, could not see the fires inside the warehouse. On cross-examination he stated that he did not detect any odor of sul-

phur dioxide either at the roof or inside the warehouse. He further stated that, after going down into the warehouse later, he saw two fire areas, one directly back from the door area and one to the right, behind a partition area.

Captain Hassett, the assistant fire marshal, whose duty it was to investigate fires and their causes for the fire department, testified that he arrived on the scene at approximately one o'clock P.M., and that upon making his investigation, he found sulphur candles dangerously close to inflammable materials of the type which would both carry and accelerate a fire if they were lighted. The original positions of the sulphur candles indicated that they were deliberately placed near combustible material in such a position that a fire was inevitable. The candles were originally placed in the warehouse by appellant and two employees. Both the defendant and the employees expressed the opinion to Captain Hassett, after viewing the fire department photographs, that the candles shown on the photographs were not in the position in which they were placed originally by them. A strong inference arose that someone had returned to the warehouse before the fire and had changed the positions of the candles.

William B. Sullender, a Commonwealth witness, testified that he occupied the office at the head of the driveway at 5407 Wyalusing Avenue and that on the morning of the fire, between 10:30 and 11:00 A.M., the defendant came to the warehouse with two others. They were in the warehouse between twenty and thirty minutes. The three men came out of the warehouse and the two helpers drove off. About eight or ten minutes later the witness was looking through a window which gave him a view of the driveway and he saw someone

walk by the window. He walked to a door which opens onto the driveway and he saw the defendant going through the small door which is a part of the large sliding door of the warehouse. Sullender testified he recognized the defendant as one of the firm which rents the building and that the defendant then entered the building. Eight or ten minutes later, the witness testified, he saw the defendant walk out the driveway and walk west on Wyalusing Avenue. A few minutes to 12:00 noon, the fire broke out.

It is significant that the defendant, in his interrogation by the fire department investigators, never admitted returning to the warehouse by himself until after Captain Hassett was informed by Sullender that the defendant had entered the warehouse alone shortly before the fire broke out. There are other factors which amply support the jury's verdict but with those we need not concern ourselves in view of the limited question raised on appeal.

The defendant admitted freely that he and his two employees did in fact place the sulphur candles in the warehouse but the defense, briefly, was to the effect that the candles were placed in the warehouse to fumigate it from cockroaches with which it had become infested. The defendant testified that the cockroaches had gotten into the new furniture and this was discovered on a delivery to a customer. DDT bombs were first used but without the desired result and it was decided to try sulphur candles. It was maintained that the candles were not moved and the defendant did not reenter the warehouse after the candles were placed and ignited.

During the testimony of Captain Hassett, he was questioned concerning his qualifications as an expert. It appeared that he had been in the fire department

for over fourteen years and had also been in charge of the Marine Corps Fire Department at Camp Lejuene, North Carolina during the war. In addition, he had attended seminars at Purdue University in arson investigation and one at New York University. For a period of years it had been his duty to investigate fires for the Philadelphia fire department to determine, if possible, their nature and origin. He was then asked whether, on the basis of the testimony given by Captain DiRomaldo and Captain Putz and heard by him, and on the basis of his own examination of the premises, he had formed an opinion as an expert as to the cause of the fire. He replied that he definitely had and that the fire, in his opinion, was of incendiary origin.

Counsel for defendant vigorously objected to the introduction and admission of this expert testimony and the only question raised on this appeal relates to the propriety of admitting this testimony. It is the contention of the appellant that the trial court committed fundamental and prejudicial error in admitting this testimony because (1) there was ample and direct evidence from which the jury could draw an inference, independent of expert opinion, as to the cause of the fire, and (2) the facts upon which the expert opinion is based are in conflict and in dispute.

In *Commonwealth v. Nasuti*, 180 Pa. Superior Ct. 279, 119 A. 2d 642, Judge HIRT, said: " 'In an arson case, a witness cannot, as a general rule, testify concerning his opinion as to whether the fire was or was not of incendiary origin, that being a question for the jury to determine, and upon which they can usually form their own opinion without any need of expert advice. However, exceptional cases may arise which would justify the admission of expert opinion testi-

mony on such a question as an aid to the jury in arriving at their determination.' "

Our Supreme Court granted an allocatur in the above case (*Commonwealth v. Nasuti*, 385 Pa. 436, 123 A. 2d 435) and in affirming the decision of this court, Chief Justice HORACE STERN said: "Defendant objected to the admission of this expert testimony on the ground that it purported to answer the ultimate question which it was the function of the jury to decide. This is an obvious misconception in that the ultimate question for the decision of the jury was not whether the fire was of incendiary origin but whether defendant was guilty of the perpetration of the crime. No reason is or can be advanced why the introduction of expert testimony in connection with the proof of the corpus delicti in arson cases should be governed by any different rules than those which apply in prosecution for other crimes. . . . Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience. . . ."

In our opinion the evidence before the jury was conflicting and the inferences certainly not within ordinary training or experience. Various theories were advanced for the possible cause of the fire. The Commonwealth's theory was that the defendant entered the warehouse alone and deliberately placed the sulphur candles in positions that the ensuing fire was inevitable. The defense contended that a 300 watt light bulb used in the warehouse might not have been turned off and that the hot bulb might have come in contact with some inflammable substance which caused the fire. It was also urged that this bulb could be moved about by means of a long extension cord and the jury was also urged to infer that the fire could have been caused by

a "short" in the extension cord. It was urged that the sulphur candles accidentally touched off the fire; that only one fire began originally which mushroomed into four or five fires as a result of flying sparks. A very significant fact developed was that the distinct and unconnected fires were burning from the bottom up. No group of laymen could be expected to know the significance of this fact without some explanation from a qualified person familiar with various types of fires and the difference in their nature, acceleration, intensity, types of material, etc. Under such circumstances, we believe the court below committed no error in allowing the expert opinion testimony of Captain Hassett. Such testimony did not invade the functions of the jury because the jury was still at liberty to reject such expert opinion and accept some other view if its determination of the facts warranted such view.

It is also urged that the facts upon which the expert opinion is based are in conflict and in dispute. Concededly this argument would be sound if the facts warranted such assumption. However, the evidence does not support this argument. Appellant contends that the testimony of Captain DiRomaldo and Captain Putz was in conflict as to the number of fires observed. The two witnesses did not enter the warehouse at the same time. Captain Putz testified that the fires were apparently out when he entered the warehouse and, therefore, could not have seen the fires. Moreover, he testified that while on the roof of the warehouse, he was unable to see the fires or the flames of any fire because of the smoke. Finally, what Captain Putz stated was that when he came down into the warehouse he saw *two fire areas* and not *two fires*. We find no error in this regard.

Judgment is affirmed and the record is remitted to the court below, and it is ordered that defendant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence, or any part thereof, which had not been performed at the time the appeal in this case was made a supersedeas.