Commonwealth *v.* Paskings, Appellant.

Argued November 8, 1971. Before Jones, Eagen, O'Brien, Roberts, Pomeroy and Barbieri, JJ.

*Esther F. Clark*, with her *Seletz and Clark*, for appellant.

*O. W. Higgins*, Assistant District Attorney, with him *Anna Iwachiw Vadino* and *Ralph B. D'Iorio*, Assistant District Attorneys, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, April 20, 1972:

Early in the morning of October 24, 1964, the home of Luther and Mary Roberts in Chester, Pennsylvania, caught fire, resulting in the deaths of four of their seven children. Appellant was arrested and later indicted for arson and murder. A trial on both indictments commenced June 15, 1965. As the close of the Commonwealth's case, appellant entered pleas of guilty, whereupon a court *en banc* returned a verdict of first degree murder and sentenced her on June 28, 1965, to an indeterminate term in the State Industrial Home for Women at Muncy. Sentence on arson was suspended.

Appellant subsequently filed three petitions under the Post Conviction Hearing Act, the last resulting on November 22, 1968 in a resentence of life imprisonment because the Muncy Act[1] had been declared unconstitutional. On December 30, 1968 a fourth PCHA petition was filed alleging *inter alia* that appellant would not have pleaded guilty had she known that the Muncy Act was unconstitutional. A hearing was held, and on September 30, 1969 a new trial was ordered.

Testimony at the new trial, which commenced on April 6, 1970 elicited the following: Appellant had been involved in October, 1964 in a meretricious relationship with Luther Roberts for approximately five years. On the evening of October 23, 1964, they had a quarrel at her apartment at which time blows were exchanged and Luther returned home to his wife. Later that evening a fire broke out in the cellar of the Roberts' house, but it was quickly extinguished and no one was injured. Appellant was in the vicinity at the time, but denied having set the fire when accused by Mrs. Roberts. Early the next morning, a second fire occurred and took the lives of the four small Roberts children.

---

[1] Act of July 25, 1913, P. L. 1311, §15, as amended, 61 P.S. §566.

The Commonwealth's evidence included oral statements made by appellant to the Chester police, the State Police, and to members of the Volunteer Fire Department in which she confessed that on the day of the fire she went to the Roberts' house, struck a match, put her hand in the window in the shed in the rear, and ignited some paper. Further testimony showed the incendiary nature of the fire. Appellant took the stand and denied setting the fire or making the oral statements. The jury returned a verdict of first degree murder and arson. On January 8, 1971, after denial of post-trial motions, penalty on the murder bill was fixed at life imprisonment. Sentence on the arson indictment was again suspended. This appeal followed.[2]

The denial of a new trial is challenged on four grounds. Appellant's first objection is to the time and manner of her arraignment, which took place on the day of the trial and in the presence of the entire jury panel. Rule 317(b) of the Pennsylvania Rules of Criminal Procedure providing "Arraignment in all cases shall be mandatory and shall take place *at least ten days before trial* unless provided otherwise by local court rule or waived by a defendant who has counsel of his own choice" (emphasis added), is inapplicable to this case. The accused had been arraigned previously on the same indictment. As we said in *Commonwealth v. Phelan*, 427 Pa. 265, 272-3, 234 A. 2d 540 (1967) : ". . . the purpose and necessity of an arraignment is to fix the identity of the accused, to inform him of the nature of the charges against him and to give him the opportunity of informing the court of his plea thereto (citations omitted). Due process of law does not require

---

[2] The arson appeal was originally filed in the Superior Court. Pursuant to Section 503(c) of the Appellate Court Jurisdiction Act of 1970, July 31, P. L. 673, §503, 17 P.S. §211.503(c), the Superior Court certified that appeal to this Court where it was consolidated with the previously filed appeal from the murder conviction.

that any technical form of procedure be followed so long as the identity of the accused is definite, sufficient notice of the charges is given, and ample opportunity to plead afforded (citations omitted)." Appellant's identity as the accused and the charges against her unquestionably were known as a result of the first arraignment and subsequent legal proceedings. She had counsel from the time of her December 30, 1968 PCHA petition who shared in this awareness. The fact that appellant's plea was taken in front of a jury, though a procedure not contemplated by Rule 317, was not shown to have been in any way prejudicial to her.

Appellant's second assignment of error is that the Commonwealth's failure to produce Luther Roberts at the second trial constituted a deprivation of her constitutional right to confront and cross-examine her accuser. This right, however, extends only to witnesses whose testimony is offered. Roberts did not testify and the presence of his name on the back of the indictment did not obligate the Commonwealth to produce him. We said recently in *Commonwealth v. Gray,* 441 Pa. 91, 100, 271 A. 2d 486 (1970), that the Commonwealth is not bound to call all available and material witnesses, though when it does not, the defense should be apprised of the witness' name and whereabouts. *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A. 2d 382 (1970). See also *Commonwealth v. Horn,* 395 Pa. 585, 150 A. 2d 872 (1959); *Commonwealth v. Palermo,* 368 Pa. 28, 81 A. 2d 540 (1951); *Commonwealth v. Giacobbe,* 341 Pa. 187, 19 A. 2d 71 (1941). The Commonwealth did all that could have been expected to locate Roberts. After discovering his absence, a bench warrant was issued and delivered to the sheriff, whose efforts at service proved unavailing. In addition, the defense must be held to have acquiesced in Roberts' absence, for at no time was a motion made either for a

continuance or to introduce Roberts' testimony from the previous trial. See Act of May 23, 1887, P. L. 158, §3, 19 P.S. §582.

Appellant's next contention is that because Roberts could not be located, a tape-recorded statement made to appellant's counsel should have been admitted. This statement was not a deposition, was not sworn to, and the Commonwealth had no representative present when it was taken. Thus it was clearly inadmissible hearsay and properly excluded.

The final objection is to the trial judge's exclusion of the testimony of an expert witness called by the defense in an attempt to show that the fire was not of incendiary origin. After establishing his qualifications, the witness testified that he had read the notes of testimony from the first trial and had viewed the exterior of the burned house on April 4, 1970, six years after the fatal fire. The witness was then asked his opinion as to the origin of the fire. The Commonwealth's objection to this question was sustained, we think properly.[3]

The appropriateness of expert testimony relating to the incendiary origin of fires is well recognized in our courts. *Commonwealth v. Kaufman*, 182 Pa. Superior Ct. 197, 126 A. 2d 758 (1956); *Commonwealth v. Nasuti*, 180 Pa. Superior Ct. 279, 119 A. 2d 642 (1956); *Commonwealth v. George*, 178 Pa. Superior Ct. 261, 116 A. 2d 253 (1955). As with all expert opinion, however, it is essential that the salient facts relied

---

[3] The Commonwealth objected to this expert testimony on the additional ground that the witness had not gone inside the building, nor had he examined the Commonwealth's exhibits showing the charred condition of the interior. The Commonwealth thus argued that the witness was incapable of giving an informed opinion on the fire's origin. It may well be that these factors would go to the weight to be given the proffered testimony, rather than to its admissibility. As discussed in the text, however, the Commonwealth's objection was properly sustained on other grounds.

upon as the basis for the opinion be in the record. *Collins v. Hand,* 431 Pa. 378, 246 A. 2d 398 (1968); *Murray v. Siegal,* 413 Pa. 23, 195 A. 2d 790 (1963); *Howarth v. Adams Express Co.,* 269 Pa. 280, 112 Atl. 536 (1921). Here, because none of the notes of testimony from the previous trial were read into this record in open court, the jury could not know upon what facts the expert had based his opinion. The evidence, therefore, was properly excluded. *Commonwealth v. Petrillo,* 338 Pa. 65, 12 A. 2d 317 (1940).

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL took no part in the consideration or decision of this case.

The former Mr. Justice BARBIERI took no part in the decision of this case.