J-S20028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD KENT | : | |
| | : | |
| Appellant | : | No. 229 MDA 2024 |

Appeal from the Judgment of Sentence Entered June 16, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003790-2019

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: JULY 14, 2025**

Ronald Kent ("Kent") appeals *pro se* from the judgment of sentence imposed following his convictions for possession with intent to deliver a controlled substance (methamphetamine), delivery of a controlled substance (methamphetamine), and endangering the welfare of a child less than six years old ("EWOC").[1] We affirm.

In 2019, through the use of a confidential informant ("CI"), Detective James Conmy ("Officer Conmy") of the Wilkes-Barre Police Department and Pennsylvania State Trooper Jeffrey Lamm ("Trooper Lamm") conducted a controlled drug buy during which Kent sold methamphetamine to the CI in exchange for pre-recorded money and pre-marked SIM cards. The transaction occurred while Kent was sitting in his vehicle with his three-year-old daughter.

---

[1] *See* 35 Pa.C.S.A. § 780-113(a)(16), (30); 18 Pa.C.S.A. § 4304(a)(1).

The CI entered the vehicle, conducted a hand-to-hand exchange with Kent, and then exited the vehicle. The CI then signaled to police that the transaction had been completed. Police stopped Kent's vehicle a few blocks away, recovered the pre-recorded money and pre-marked SIM cards, and heard Kent's phone ring when they called the phone number that the CI had used to arrange the drug purchase. Police arrested Kent and charged him with possession with intent to deliver a controlled substance, delivery of a controlled substance, EWOC, tampering with physical evidence, criminal use of a communication facility, possession of a controlled substance, and possession of drug paraphernalia.

At the preliminary arraignment, Kent, who was represented by counsel, waived his preliminary hearing and agreed to plead guilty to the charges of delivery of a controlled substance, EWOC, and tampering with physical evidence. In exchange, the Commonwealth agreed to a bail reduction and to withdraw the remaining charges against Kent. In reliance upon the plea agreement, the Commonwealth withdrew the remaining charges.

Kent later chose to proceed *pro se* and, following a hearing pursuant to **Grazier**,[2] he was permitted to represent himself. Kent also backed out of the plea agreement and opted to instead proceed to a jury trial. Kent then filed a pretrial motion in which he raised a speedy trial violation under Pa.R.Crim.P.

---

[2] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

600 and moved to suppress certain physical evidence. The trial court conducted a hearing at which it initially addressed the Rule 600 motion and heard testimony by the prosecutor regarding the Commonwealth's due diligence and the numerous delays caused by the COVID-19 pandemic and Kent's multiple requests for continuances. The court denied the Rule 600 motion. The court then addressed the suppression motion, and heard testimony from Officer Conmy regarding how the controlled buy was organized, how the buy and arrest occurred, and that upon stopping Kent's vehicle, police found the pre-recorded money and pre-marked SIM cards in the vehicle, and that when the officers called the phone number that the CI had used, Kent's cell phone rang. At the end of the hearing, the Commonwealth moved to amend the criminal information to reinstate the charges that it had withdrawn in reliance on the plea agreement. The trial court granted the amendment and took the suppression issue under advisement.

Kent then filed an additional motion to suppress, and the trial court conducted a further suppression hearing. At the second suppression hearing, Trooper Lamm testified that he met with the CI, searched him to be sure he did not possess any contraband, provided him with the pre-recorded buy money and pre-marked SIM cards, and drove him to the designated meeting place. The trooper additionally testified that he then positioned himself to observe the meeting, watched the CI enter Kent's car, observed the drug

transaction, saw the CI get out of Kent's car, and then give the signal that the buy had occurred. The trooper explained that he then notified other officers to follow and stop Kent's car while the trooper met with the CI and searched him on the side of the road by making him take off his shirt and hat, going through his pockets, and ensuring that he did not have any contraband on him. Finally, the trooper stated that he then proceeded to the vehicle stop at which time he observed the pre-recorded money and pre-marked SIM cards on the front passenger seat. The trial court took the suppression matter under advisement.

In October 2022, the trial court entered an order denying Kent's motions to suppress, and issued findings of fact and conclusions of law wherein it found, *inter alia*: (1) "the CI had been used by law enforcement in multiple prior investigations resulting in arrests and convictions;" (2) "the CI communicated through text messaging with a male individual from whom the CI had previously purchased methamphetamine utilizing the same cell phone number being used in this instance;" (3) "arrangements were made between the CI and the male (later identified as [Kent]) for the CI to purchase crystal methamphetamine from [Kent] in exchange for cash and SIM/SD cards requested by [Kent];" and (4) "Trooper Lamm who maintained surveillance from a short distance away observed a hand-to hand transaction occur between the CI and [Kent]." Findings of Fact and Conclusions of Law, 10/17/22, at unnumbered 1-2.

Prior to trial, Kent filed a motion *in limine*, seeking to exclude the evidence and testimony presented at the suppression hearings. ***See*** Motion *in Limine*, 2/8/23. The trial court denied the motion *in limine*.

The matter then proceeded to a jury trial at which the Commonwealth presented the testimony of Detective Conmy and the CI. Kent cross-examined each of the Commonwealth's witnesses. After the Commonwealth rested its case, Kent attempted to introduce Trooper's Lamm's testimony from the second suppression hearing pursuant to Pennsylvania Rule of Evidence 804.[3] The Commonwealth objected, and the trial court sustained the objection on the basis that the testimony constituted hearsay and Kent failed to either call the troper as a defense witness or establish that he attempted to subpoena the trooper and the trooper was unavailable to testify in person. At the conclusion of trial, the jury convicted Kent of possession with intent to deliver a controlled substance (more than 2.5 grams of methamphetamine), delivery of a controlled substance (more than 2.5 grams of methamphetamine), and EWOC. The jury found Kent not guilty of criminal use of a communication facility and possession of drug paraphernalia. The trial court acquitted Kent

---

[3] Rule 804 provides certain exceptions to the general rule against the admission of hearsay evidence at trial, including when the declarant of the hearsay testimony "is absent from the trial . . . and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance, in the case of Rule 804(b)(1) . . .." Pa.R.E. 804(a)(5)(A). Rule 804(b)(1) pertains to testimony that "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or in a different one." Pa.R.E. 804(b)(1)(A).

of tampering with evidence.[4]  On June 16, 2023, the trial court sentenced Kent

to an aggregate term of fifty-four to 168 months in prison.  Kent filed a timely

post-sentence motion which the trial court denied on October 20, 2023.  Kent

requested an extension of time in which to file a notice of appeal, and the trial

court granted his request.  On February 12, 2024, Kent filed a notice of

appeal.[5]

_____

[4] During trial, the Commonwealth withdrew the charge of possession of a
controlled substance.

[5] As the trial court entered its order denying Kent's post-sentence motion on
October 20, 2023, Kent had thirty days from that date, until November 20,
2023, in which to file his notice of appeal.  **See** Pa.R.A.P. 903(a) (providing
that the notice of appeal shall be filed within thirty days after the entry of the
order from which the appeal is taken); **see also** 1 Pa.C.S.A. § 1908 (providing
that whenever the last day of a period of time referred to in a statute falls on
a weekend or on any legal holiday, such day shall be omitted from the
computation of time).  Importantly, the time for filing a notice of appeal is
jurisdictional and may not be extended as a matter of grace or indulgence.
**See Commonwealth v. Pena**, 31 A.3d 704, 706 (Pa. Super. 2011).  As such,
the trial court lacked authority to grant Kent an extension of time in which to
file his notice of appeal.  Thus, Kent's notice of appeal, filed on February 12,
2024, is untimely.  However, the October 20, 2023 trial court docket entry
does not indicate service of the order on Kent.  **See** Pa.R.Crim.P. 114(B)(1)
(providing that "[a] copy of any order or court notice promptly shall be served
on each party's attorney, or the party if unrepresented); **see also**
Pa.R.Crim.P. 114(C)(2) (providing that the docket entry shall contain, *inter
alia*, the date of service of the order); Pa.R.A.P. 108(a)(1) (providing that the
day of entry of an order shall be the day the clerk of the court mails or delivers
copies of the order to the parties).  Accordingly, due to this deficiency in the
trial court docket, we decline to quash the instant appeal as untimely.  **See
Commonwealth v. Midgley**, 289 A.3d 1111, 1117 (Pa. Super. 2023)
(holding that where the trial court docket in a criminal case does not indicate
service on a party or the date of service, we will not quash the appeal, and
will instead consider the time in which to take an appeal as never having
started to run and treat the appeal as timely).

While the appeal was pending, this Court directed the trial court to determine whether Kent's ongoing waiver of counsel was knowing, intelligent, and voluntary. The trial court conducted another *Grazier* hearing and granted Kent's request to continue to proceed *pro se* in this appeal. The trial court ordered Kent to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and both Kent and the trial court complied with Rule 1925.

Kent raises the following issues for our review:

1. Whether the trial court committed an error of law and abused it's [*sic*] discretion in denying [Kent] the opportunity to challenge the sufficiency of the Commonwealth's *prima facie* case in accordance with P[a].R.Cr[im].P. . . . 541(b) when withdrawn charges were improperly amended.

2. Whether, (a) the Commonwealth knowingly offered false testimony from the [CI]; (b) the trial court committed reversible error sustaining the Commonwealth's objection to [Kent] presenting prior testimony from the affiant PA. State Trooper Jeffrey Lamm;(c) the trial court committed reversible error at trial allowing the Commonwealth to declare Trooper Lamm unavailable for trial without prior notice, therefore violating [Kent's] right to confrontation.

3. Whether the trial court erred and abused it's [*sic*] discretion in failing to suppress evidence at the suppression [*sic*] and using surmise and conjecture in the "Finding of Facts" and "Conclusions of Law."

4. Whether the Commonwealth established that it did not violate [Kent's] right to speedy trial by (a) proving circumstances causing delay of trial were beyond the control of the Commonwealth; (b) that the Commonwealth exercised due diligence in bringing the appellant to trial.

5. Whether one (or more) of the four challenges that causes an illegal sentence has emerged in this instant case.

Kent's Brief at 1-2.

In his first issue, Kent contends that the trial court abused its discretion by permitting the Commonwealth to amend the criminal information to reinstate the previously withdrawn charges. We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion. *See Commonwealth v. Sandoval*, 266 A.3d 1098, 1101 (Pa. Super. 2021).

In addressing this issue, we are mindful that, after criminal charges have been filed against a defendant, the matter proceeds to a preliminary hearing at which the issuing authority must determine from the evidence presented whether the Commonwealth has established, for each crime alleged, a *prima facie* case that: (1) an offense has been committed; and (2) the defendant committed it. *See* Pa.R.Crim.P. 542(D). The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime. *See Commonwealth v. Jackson*, 849 A.2d 1254, 1257 (Pa. Super. 2004).

A criminal defendant has the right to waive the preliminary hearing. *See* Pa.R.Crim.P. 541(A) (providing that "[t]he defendant who is represented by counsel may waive the preliminary hearing at the preliminary arraignment or at any time thereafter"). A defendant who waives the right to a preliminary hearing also waives the right to test the sufficiency of the Commonwealth's evidence in a later pretrial motion for writ of *habeas corpus*, unless there is a

transcribed oral or written agreement expressly preserving such right. ***See*** Pa.R.Crim.P. 541(A)(1), (C), *Comment*. However, Rule 541 also provides that, "[i]f the defendant waives the preliminary hearing by way of an agreement, made in writing or on the record, and the agreement is not accomplished, the defendant may challenge the sufficiency of the Commonwealth's *prima facie* case." Pa.R.Crim.P. 541(A)(2).

Additionally, Rule 544(A) provides that, "[w]hen charges are dismissed or withdrawn at, or prior to, a preliminary hearing . . . the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges." Pa.R.Crim.P. 544(A). "The [trial] court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564.

Kent contends that he waived his preliminary hearing in agreement for the Commonwealth to reduce his bail and to withdraw the offenses of possession with the intent to deliver, criminal use of a communication facility, tampering with physical evidence, possession of a controlled substance, and possession of drug paraphernalia. According to Kent, during the suppression hearing, the Commonwealth made an oral motion to amend the information to reinstitute the charges that were withdrawn at the preliminary arraignment,

given that Kent backed out of the plea agreement and opted to proceed to trial. Kent asserts that he was denied an opportunity to challenge the Commonwealth's *prima facie* case for the charges that were reinstated. Kent additionally argues that the trial court lacked authority to amend the information. Kent submits that, as a result of the trial court's erroneous decision, the Commonwealth did not establish a *prima facie* case for the reinstated charges, therefore violating his due process rights.[6]

The trial court considered Kent's first issue and determined that it lacked merit. The court reasoned:

> Here, [Kent], while represented by counsel, waived his preliminary hearing . . .. In waiving the preliminary hearing and consenting to be bound over to court, [Kent] and defense counsel certified in writing that (1) the issuing authority told [Kent] of the right to have a preliminary hearing, (2) [Kent] understood that by waiving the right to have a preliminary hearing, he was thereafter precluded from raising challenges to the sufficiency of the *prima facie* case, and (3) [Kent] voluntarily waived the hearing and consented to be bound over to court. There was no agreement

_____

[6] Kent asserts that he "contested the motion to amend requesting that trial [*sic*] allow him to challenge the Commonwealths [*sic*] sufficiency of the *prima facie* evidence . . .." Kent's Brief at 4-5. Notably, Kent has not directed this Court to the place in the record where any such request was made. **See** Pa.R.A.P. 2119(c) (providing that if reference is made to any matter appearing in the record, the argument must set forth, in immediate connection therewith or in a footnote thereto, the place in the record where the matter referred to appears); **see also** Pa.R.A.P. 2119(e) (providing that, where an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth the place in the record where the issue was raised or preserved). Moreover, our review of the transcript of the suppression hearing confirms that, after the trial court orally granted the Commonwealth's request to amend the information, Kent did not request a preliminary hearing or raise any challenge to the sufficiency of the Commonwealth's *prima facie* evidence for the reinstated charges. **See** N.T., 2/23/22, at 37-42.

> between the parties at the time of the waiver that [Kent] later may challenge the sufficiency of the Commonwealth's *prima facie* case. As a result, [Kent] was precluded from raising the sufficiency of the evidence of the Commonwealth's *prima facie* case, and [Kent] is not entitled to appellate relief on this claim.

Trial Court Opinion, 5/31/24, at 9 (footnote, citations, quotation marks, and unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in permitting the reinstatement of the previously withdrawn charges. Here, Kent maintains that he waived his right to a preliminary hearing based upon the Commonwealth's agreement to reduce bail and refrain from pursuing the remaining charges. However, after he declined to enter a guilty plea pursuant to the negotiated plea agreement and opted to proceed to trial, the Commonwealth sought leave to amend the information to reinstate the withdrawn charges. At that time, if Kent believed that there was insufficient evidence for the Commonwealth to make out a *prima facie* case for the reinstated charges, his remedy would have been to demand a preliminary hearing on the reinstated charges pursuant to Rule 541(A)(2). Kent did not avail himself of this remedy. Thus, as Kent did not request a preliminary hearing or otherwise challenge the sufficiency of the Commonwealth's *prima facie* case on the reinstated charges following the amendment, he waived his right to present such a challenge on appeal. *See* Pa.R.A.P. 302(a) (providing

that issues not raised in the trial court are waived and cannot be raised for the first time on appeal). Thus, Kent's first issue warrants no relief.[7]

In his second issue, Kent purports to raise several distinct claims.[8] Initially, Kent claims a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. Whether a defendant was denied his right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa. Super. 2017). Pertinently, the Sixth Amendment right to confrontation extends only to witnesses whose testimony is actually presented at trial. *See Commonwealth v. Paskings*, 290 A.2d 82, 84 (Pa. 1972). Further, it is not the obligation of the prosecutor in a criminal case to call all material witnesses to testify. *See Commonwealth v. Gasiorowski*, 310 A.2d 343, 344 (Pa. Super. 1973).

---

[7] We observe that in addressing Kent's first issue, the trial court focused on the provisions of 541(A)(1) and (C), and did not acknowledge or address the provisions of Rule 541(A)(2). Nonetheless, this Court may affirm the trial court's decision on any legal basis supported by the certified record. *See Commonwealth v. Williams*, 125 A.3d 425, 433 n.8 (Pa. Super. 2015).

[8] In this regard, we note with disapproval that Kent's brief fails to conform to our established appellate rules of procedure regarding the requirement that issues raised on appeal shall be identified and discussed in separate sections of the appellant's brief. *See* Pa.R.A.P. 2119(a) (providing that the argument shall be divided into as many parts as there are questions to be argued).

Additionally, Kent challenges the trial court's ruling on the admissibility of certain evidence at trial. In this regard, the admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. **See Commonwealth v. Minich**, 4 A.3d 1063, 1068 (Pa. Super. 2010).

Kent contends that "Trooper Lamm testified at the suppression hearing that he did not strip search the CI before or after the 'buy-bust' and that it was possible that the CI entered Kent's vehicle with the controlled substance on him as a result." Kent's Brief at 6. Kent claims that, "[a]t trial, the CI testified under oath that he was stripped before and after the 'buy-bust' [*sic*] Trooper Lamm at Wilkes Police Station." **Id**. Kent insists that this testimony by the CI "was false testimony." **Id**. Kent further argues:

> During testimony Kent attempts to read the testimony of Trooper Lamm from his suppression hearing to the jury the Commonwealth objects and Kent is denied by the trial court. The court states that had the oportunity [*sic*] to subpoena the affiant Trooper Lamm, who was in fact he [*sic*] Commonwealths [*sic*] witness. The Commonwealth stated during trial that the affiant Trooper Lamm was unavailable as per the PA. State Police; no reason for his unavailability was given at that time. The Commonwealth did not submit its witness list until the day before trial; Kent was incarcerated and would not have had an opportunity to subpoena the witness if it was actually required by the confrontation clause. This false testimony was instrumental in the juries [*sic*] finding of guilt and as a result appellant was convicted of the charges.

Kent's Brief at 6 (unnecessary capitalization and citations omitted).[9]

The trial court considered Kent's second issue and determined that it lacked merit. The court reasoned:

> The affiant, Detective Conmy, was called to testify as a Commonwealth witness at trial, and [Kent] was given the opportunity to fully cross-examine him. Trooper Lamm, Detective Conmy's co-affiant, was not called as a Commonwealth witness at trial. [Kent] did not subpoena Trooper Lamm to testify as a defense witness, and did not request a continuance in order to do so when he was informed that the Commonwealth was not calling Trooper Lamm as a Commonwealth witness. . . . After the Commonwealth rested, [Kent] sought, during his case in chief[,] to introduce Trooper's Lamm's testimony from the May 10, 2022 pre[]trial hearing, citing [Rule] 804(b)(1) in support of his request. The Commonwealth objected to the introduction of Trooper Lamm's pre[]trial hearing testimony, and the court sustained the objection.
>
> Turning to [Kent's] current allegation regarding . . . Trooper Lamm, to the extent that the allegation is construed to complain that the Commonwealth did not call Trooper Lamm as a trial witness, the Commonwealth was not obligated to call every potential witness in the case . . . and the Sixth Amendment right to confrontation extends only to witnesses whose testimony is presented.
>
> Additionally, as to the court's refusal to allow introduction of Trooper Lamm's prior testimony under Rule 804(b), [Kent] was not prevented from calling Trooper Lamm as a defense witness.

_____

[9] In connection with his second issue, Kent additionally claims that the Commonwealth committed a discovery violation pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963). However, this issue was not raised in Kent's concise statement. **See** Concise Statement, 4/5/24, at 1-2; **see also** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived). Nor was it raised in the statement of questions involved. **See** Pa.R.A.P. 2116(a) (providing that no question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby). Therefore, as Kent failed to preserve this issue for our review, we may not address it.

> Thus, Trooper Lamm was not an unavailable witness for purposes for Rule 804(a), the exception set forth in Rule 804(b) was not applicable, and this court did not err in sustaining the Commonwealth's objection to Trooper Lamm's pre[]trial hearing testimony.

Tial Court Opinion, 5/31/24, at 10-12 (citations to the record and unnecessary capitalization omitted).

Based on our review, we conclude that no violation of the Confrontation Clause occurred, and the trial court did not err in sustaining the Commonwealth's objection to Kent's attempt to introduce Trooper's Lamm's testimony from the second suppression hearing. The Commonwealth was not required to call the trooper as a witness at trial. **See Gasiorowski**, 310 A.2d at 344. As the Commonwealth opted not to do so, no violation of the Confrontation Clause occurred in relation to Trooper Lamm. **See Paskings**, 290 A.2d at 84 (explaining that the right to confrontation extends only to witnesses whose testimony is actually presented at trial).[10]

Moreover, the trooper's prior testimony constituted inadmissible hearsay, and Kent failed to either subpoena the trooper as a defense witness or establish that the trooper was unavailable to testify at trial in accordance

---

[10] To the extent that Kent believed that the CI provided false testimony, Kent was provided with the opportunity to, and did in fact, cross-examine the CI at trial as to whether he was strip searched. **See** N.T., 3/21/23, at 53-54. The CI confirmed that he was strip searched at the police station prior to the controlled buy. **See id**. The CI further indicated that, after the strip search, he was dropped off to a location where the police "were set up there already to watch me from beginning to end." **Id**. at 54.

with Rule 804. Thus, as Kent was unable to satisfy the requirements of Rule 804, we discern no abuse of discretion by the trial court in sustaining the Commonwealth's objection to the admission of the trooper's prior testimony. Accordingly, Kent's second issue merits no relief.

In his third issue, Kent challenges the trial court's suppression rulings. Our standard of review of an order denying suppression is well-settled:

> When we review the ruling of a suppression court[,] we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Hicks*, 208 A.3d 916, 925 (Pa. 2019) (citation omitted). Our scope of review of the suppression court's factual findings is limited to the suppression hearing record. *See Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021) (citations omitted). However, as an appellate court, we are not bound by the suppression court's conclusions of law. *See Hicks*, 208 A.3d at 925. Rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary. *See id*.

Kent contends that "[i]n the suppression court's 'Findings of Fact' and 'Conclusions of Law[,]' the court based its entire decision on surmise and conjecture contradicting the affiants [*sic*] in court [*sic*] testimony and the affidavit of probable cause." Kent's Brief at 7. Kent maintains that "Trooper

- 16 -

Lamm stated that he did not observe Kent actually hand anything to the CI."

***Id***. Kent argues that, although the court concluded that the CI had been used by law enforcement in multiple prior investigations, this fact was not presented in the affidavit of probable cause or testified to by either affiant. Kent points to the trial court's finding that the CI had previously purchased methamphetamine from Kent, and claims that this was not stated anywhere in the record, nor did the Commonwealth produce any text that proved that the CI facilitated the drug deal with Kent.

The trial court considered Kent's third issue and determined that it lacked merit. The court stated that, "contrary to [Kent's] assertion, the court's findings of fact are fully supported by the record, and the subsequent admission of evidence at trial did not alter the propriety of that suppression ruling." Trial Court Opinion, 5/31/24, at 7 (unnecessary capitalization omitted).

Based on our review of the suppression record, we conclude that the trial court's factual findings are supported by the record. At the first suppression hearing, Detective Conmy testified that "[t]he [CI] over time . . . has been used in multiple prior investigations that resulted in arrests and convictions." N.T., 2/23/22, at 31. The detective confirmed that, based on his training and experience, he believed that the CI was "credible." ***Id***. The detective explained that the CI "indicated that he purchased methamphetamine from a male utilizing a cell phone number that was listed

in the [a]ffidavit." *Id*. at 29. According to the detective, "[t]he [CI] placed a text message to the number in the affidavit [and] we got a response back that[: (1)] he agreed to do the transaction[;] and [(2)], directed us to the area of Beaumont and Madison Streets in the city." *Id*. at 32. The detective indicated that when they stopped Kent's vehicle following the controlled buy, he called the number that the CI had used to arrange the drug deal and Kent's cell phone rang. *Id*. at 31.

At the second suppression hearing, Trooper Lamm testified that he "met with the [CI] prior to the transaction, searched the [CI], and made sure [the CI was] free of drugs, money, or any contraband." N.T., 5/10/22, at 14. The trooper further explained that "Kent, during the phone conversation we had placed earlier, wanted SD cards and cash in exchange for crystal methamphetamine." *Id*. The trooper continued that, "once I got the [CI] ready, I drove the [CI] to the location[,] . . . [t]he CI then exited my vehicle and met [Kent] where at that point I was in the immediate area within 100 feet of that, so I observed a transaction happen inside of a . . . Hyundai sedan." *Id*. at 15. The trooper clarified, "I observed the transaction occur, the CI exited the vehicle, he gave us a predetermined signal [and] walked back to my vehicle." *Id*. The trooper "then drove around the corner, searched the informant again and made sure that he had no additional drugs, money [or] contraband . . .." *Id*.

Based on the above testimony provided at the suppression hearings, we conclude that the suppression court's findings of fact are supported by the suppression record. Thus, as we find no merit to Kent's claims that such finding were based on surmise and conjecture, his third issue warrants no relief.

In his fourth issue, Kent challenges the trial court's ruling that no Rule 600 violation occurred. Our standard of review regarding the trial court's decision on a Rule 600 speedy trial motion is whether the trial court abused its discretion. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. *See id*. Our scope of review is limited to the evidence of record at the Rule 600 evidentiary hearing, and the trial court's findings. *See id*. We view the facts in the light most favorable to the prevailing party. *See id*.

Rule 600 states that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). This initial calculation determines the mechanical run date, which is thereafter adjusted based on certain periods of delay pursuant to Rule 600(C), which provides:

"periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

In ruling on a defendant's Rule 600 motion, the trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case. *See Commonwealth v. Harth*, 252 A.3d 600, 618 (Pa. 2021). It is the Commonwealth's burden to show due diligence by a preponderance of the evidence. *See Commonwealth v. Wiggins*, 248 A.3d 1285, 1289 (Pa. Super. 2021) (holding that "the onus is on the Commonwealth to demonstrate that it engaged in due diligence in at least being capable of bringing a defendant to trial within the prescribed time parameters"). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted). Pertinently, Rule 600 expressly excludes from computation all periods of delay resulting from any continuance granted at the request of the defendant. *See Commonwealth v. Dunmore*, 324 A.3d 1, 8 (Pa. Super. 2024).

Kent concedes that trial was originally scheduled for March 16, 2020, but on that date, the trial court placed a capias on him for not reporting for

trial. Kent further concedes that in March 2020, all trials were cancelled as a result of the Statewide Judicial Emergency mandate due to the COVID-19 pandemic. Nonetheless, Kent contends that the record reflects that the Commonwealth did not show by a preponderance of the evidence that it proceeded with due diligence in bringing the case to trial. Kent additionally claims that "the prosecution was not prepared for trial at the time of the original trial date because full discovery was not provided to Kent until 11-23-21 and therefore did not prosecute with due diligence." Kent's Brief at 11. According to Kent, "[t]he prosecution was in possession of full discovery at the time of the original trial run date." *Id*. Kent argues that "[t]he time during that period should not have been excusable or excludable." *Id*. at 12. Kent posits that, "[e]ven with the capias time (3/16/2020-4/3/2020) excluded (17 days) the adjusted trial date would have been November 2, 2020." *Id*. Kent concludes that the trial court calculated the adjusted trial run date without meaningfully addressing the Commonwealth's due diligence in its disposition of his Rule 600 motion.

The trial court considered Kent's fourth issue and determined that it lacked merit. The court reasoned:

> Here, the criminal complaint was filed on October 16, 2019, thus the mechanical run date was October 1[6], 2020. . . . [Kent's] jury trial was scheduled for March 16, 2020, but [he] failed to appear. Before [Kent] could be located and his trial rescheduled, the operations of the court were impacted by the COVID-19 pandemic. On March 18, 2020, the Pennsylvania Supreme Court directed that . . . "[j]ury trials, both criminal and civil are SUSPENDED . . .." ***In re. General Statewide Judicial***

- 21 -

***Emergency***, . . . 228 A.3d [1280,] 1286 [(Pa. 2020)]. The Supreme Court's March 18, 2020 order further directed that:

> Rule . . . 600(C) is hereby SUSPENDED in all judicial districts during the period of statewide judicial emergency. . . . [***Id***.]

> On April 1, 2020, the Supreme Court extended its order of March 18, 2020 until April 30, 2020, and on April 28, 2020, the Supreme Court directed that "Rule . . . 600(C) remains SUSPENDED . . . through at least June 1, 2020." [***Id***.] . . . As permitted by the Supreme Court's order of May 27, 2020, [the] President Judge of the Luzerne County Court of Common Pleas . . . continued the suspension of Rule 600 in Luzerne County until September 14, 2020.

> Because the COVID trial suspension was an event beyond the control of the court or the parties, the delay it caused is excluded from the computation of time within which trial must commence.

> Here, [Kent's] trial was set to commence on September 14, 2020, when the COVID restrictions were scheduled to lift. It did not occur on that date, however, because [Kent] requested, and was granted, eight continuances. Also, during this time period, COVID restrictions were re-implemented[ on November 13, 2020, and all trials in Luzerne County were suspended until February 26, 2021]. As the result of [Kent's] continuance requests and COVID restrictions, [Kent's] trial was delayed to December 13, 2021. On December 13, 2021, [Kent] was directed to report to trial on the following day, December 14, 2021, but when he reported on December 14, 2021, he requested and was granted the right to represent himself, and trial was continued at his request until January 24, 2022. Prior to that date, however, [Kent] filed several more pre[]trial motions and the first of two interlocutory appeals [which were] eventually quashed by the Superior Court, resulting in an additional continuance of trial until May 9, 2022. On May 9, 2022, [Kent] was told to report back for trial on May 10, 2022, but on that date the court addressed additional defense motions instead, and trial was continued to October 24, 2022. Prior to that date, [Kent] filed a second interlocutory appeal that was later quashed by the Superior Court, resulting in a continuance of trial to December 19, 2022. On December 19, 2022, however, [Kent] was granted another continuance of trial until February 13, 2022.

After several additional continuances not requested by [Kent], trial commenced on March 21, 2023.

The combined days of delay caused by [Kent] and the COVID-19 pandemic total 1062 days of excludable time. This excludable time, added to the mechanical run date, results in an adjusted run date of September 12, 2023. Thus, [Kent's] March 21, 2023 trial took place prior to his adjusted run date, and no Rule 600 violation occurred.

Trial Court Opinion, 5/31/24, at 15-18 (footnotes, some citations, and unnecessary capitalization omitted).

Based on our review of the Rule 600 hearing transcript, we discern no abuse of discretion by the trial court in denying Kent's Rule 600 motion. In advancing his argument, Kent largely ignores the trial court's explanation and analysis, and does not acknowledge or address his numerous requests for continuances, pretrial motions, and interlocutory appeals, all of which were the cause of numerous delays that were excludable from the Rule 600 calculation. Moreover, Kent has not directed this Court to any evidence or testimony presented at the Rule 600 hearing that would support his argument. Nonetheless, based on our review, we conclude that the trial court carefully and thoroughly addressed the Rule 600 motion, and its calculations based on the numerous delays caused by Kent are supported by the certified record. *See* N.T., 2/23/22, at 7-11 (wherein the prosecutor explained that, other than a single thirty-eight delay requested by the Commonwealth due to lab results, the disposition sheets prepared in the case demonstrate that all other delays in bringing the matter to trial were attributable to the COVID-19 pandemic

and the numerous requests for continuances made by the defense); *see also* Trial Court Docket.  Accordingly, Kent's fourth issue merits no relief.

In his final issue, Kent raises four separate claims that his sentence is illegal.[11]  A challenge to the legality of a sentence may be appealed as of right and can never be waived.  *See Commonwealth v. Smith*, 544 A.2d 991, 994 (Pa. Super. 1988) (*en banc*).  When examining a challenge to the legality of a sentence, our scope and standard of review are as follows:

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence.  If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.  An illegal sentence must be vacated.  When the legality of a sentence is at issue on appeal, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Catt*, 994 A.2d 1158, 1160 (Pa. Super. 2010) (*en banc*) (internal citations and quotation marks omitted).

In his first illegal sentencing claim, Kent argues that his sentence is illegal because the trial court violated 42 Pa.C.S.A. § 9726(c)(1).  Section 9726(c)(1) pertains to the imposition of fines and provides, in relevant part, that "[t]he court shall not sentence a defendant to pay a fine unless it appears of record that . . . the defendant is or will be able to pay the fine."  42 Pa.C.S.A. § 9726(c)(1).

_____

[11]  Once again, we note with disapproval that these four claims should have been separately set forth in Kent's brief, rather than combined into a single issue.  *See* Pa.R.A.P. 2119(a).

Kent argues that the trial court imposed a fine without ascertaining his ability to pay the fine at sentencing in violation of section 9726(c)(1). On this basis, he claims that his sentence is illegal and must be vacated.[12]

Our review of the record reflects that the trial court did not impose any fine on Kent. **See** Sentencing Order, 6/16/23. Therefore, as the trial court imposed no fine, it did not violate section 9726(c)(1). Accordingly, Kent's initial illegality of sentence claim based on a violation of section 9726(c)(1) warrants no relief.

In his next challenge to the legality of his sentence, Kent contends that his sentence is illegal because his sentences for delivery of a controlled substance and EWOC should have merged for sentencing purposes. A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary. **See Commonwealth v. Snyder**, 870 A.2d 336, 349 (Pa. Super. 2005).

Regarding the merger of sentences, our legislature has provided that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

---

[12] As Kent did not raise this issue is his concise statement, the trial court did not address it in its Rule 1925(a) opinion.

- 25 -

42 Pa.C.S.A. § 9765. "The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

Regarding the crime of delivery of a controlled substance, the Commonwealth must establish that "a defendant, who was not registered under this act, nor a practitioner registered or licensed by the appropriate State Board, delivered a controlled substance." 35 P.S. § 780-113(A)(30).

Regarding EWOC, the Crimes Code provides that "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). The statue additionally provides that "[t]he grading of an offense under this section shall be increased one grade if, at the time of the commission of the offense, the child was under six years of age." 18 Pa.C.S.A. § 4304(b)(2).

Kent argues that the trial court violated his rights under the United States Constitution and the Pennsylvania Constitution when it imposed a sentence for twenty-seven months to eighty-four months for delivery of a controlled substance consecutive to a sentence of twenty-seven months to eighty-four months for EWOC, thereby punishing him twice for the same

offense. According to Kent, the sentences should have merged for sentencing

purposes. Kent argues that his conviction for delivery of a controlled

substance "is the circumstances encompassed in the second element of . . .

EWOC." Kent's Brief at 15. On this basis, Kent asserts that his consecutive

sentences are illegal.

The trial court considered Kent's merger claim and determined that it

lacked merit. The court reasoned:

> [A]ll of the statutory elements of delivery are not included
> in the statutory elements of [EWOC], nor are all of the statutory
> elements of [EWOC] included in the statutory elements for
> delivery. The crimes do not merge for sentencing purposes and
> the court did not err in sentencing [Kent] in this regard.

Trial Court Opinion, 5/31/24, at 13 (unnecessary capitalization omitted).

Based on our review, we conclude that Kent's illegal sentencing claim

based on merger is without merit. As explained above, for merger to apply,

**all** of the statutory elements of one of the offenses must be included in the

statutory elements of the other offense. Here, Kent makes no argument that

all of the statutory elements for delivery are included in the statutory elements

for EWOC, or *vice versa*. Nor can he, as each offense includes statutory

elements that the other offense does not include. **See** 18 Pa.C.S.A. §

4304(a)(1); **see also** 18 Pa.C.S.A. § 4304(b)(2). Accordingly, Kent's illegal

sentencing claim based on merger merits no relief.

In his next illegal sentencing claim, Kent contends that "the record does

not support that the Commonwealth attempted to establish the three

elements of EWOC; as a result, the conviction for the offense is illegal." Kent's Brief at 16. Specifically, Kent argues that the Commonwealth failed to establish the crime of EWOC because it did not present any evidence that his minor daughter was present in the vehicle when he sold methamphetamine to the CI. *See id*.

Despite Kent's characterization of this issue as implicating the legality of his sentence, it is not an illegal sentencing claim. Rather, this issue presents a challenge to the sufficiency of the evidence presented at trial. Unlike an illegal sentencing claim, which is non-waivable, a challenge to the sufficiency of the evidence is waived if not raised in a court-ordered Rule 1925(b) concise statement. *See Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998) (holding that, where a trial court directs a defendant to file a concise statement of matters complained of on appeal, any issues not raised in that statement are waived); *see also* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived). Moreover, when raising a sufficiency of the evidence claim, an appellant must specify in the concise statement of errors complained of on appeal the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257-58 (Pa. Super. 2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in the Rule 1925(b) statement the elements of particular crime not proven by the Commonwealth). Such specificity is of

particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. **See** **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013).

Here, Kent failed to assert a challenge to the sufficiency of the evidence in his court-ordered Rule 1925(b) concise statement. **See** Concise Statement, 4/5/24, at 1-2. He specifically failed to challenge the sufficiency of the evidence supporting his conviction for EWOC on the basis that the Commonwealth failed to establish that his daughter was in the vehicle. **See** **id**. Thus, he failed to preserve this issue for our review.[13]

In his final illegal sentencing claim, Kent challenges the trial court's denial of his "pre[]trial motion *in limine* pursuant to PA.R.E. Rule 103 objecting to the admission of evidence and testimony related to the controlled purchase at trial after the suppression court denied his motion to dismiss based on the same argument." Kent's Brief at 18.

Once again, despite Kent's characterization of this issue as implicating the legality of his sentence, it is not an illegal sentencing claim. Rather, this

---

[13] We additionally note that Kent failed to identify any challenge to the sufficiency of the evidence supporting his EWOC conviction in his statement of questions involved. **See** Pa.R.A.P. 2116(a) (providing that no question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby). Thus, even if Kent had raised the issue in his concise statement, we would not have been able to address it on appeal based on his failure to identify it in the statement of questions involved.

issue presents a challenge to a trial court's ruling on a pretrial motion *in limine* regarding the admission or exclusion of evidence at trial.

Here, Kent failed to assert a challenge to the trial court's denial of his motion *in limine* in his court-ordered Rule 1925(b) concise statement. ***See*** Concise Statement, 4/5/24, at 1-2; ***see also Lord***, 719 A.2d at 308; Pa.R.A.P. 1925(b)(4)(vii). Kent also failed to include this issue in his statement of questions involved. ***See*** Pa.R.A.P. 2116(a). Accordingly, he failed to preserve it for our review.

As Kent is not entitled to relief on any of his issues, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/14/2025